This cause was considered by the Court in a former appeal, reported in 200, N.C. 511, 157 S.E. 860. The facts are substantially the same and no extended restatement of them will be attempted upon this appeal.
The issues submitted were as follows:
1. "Was the contract between the Commercial Credit Company and the Triplett Lumber Company (Exhibit No. 1) lastly executed in the State of Maryland, as alleged in the answer?"
2. "If so, was said contract (Exhibit No. 1) executed by the defendant, Commercial Credit Company, in the State of Maryland in bad faith with the intent and purpose of evading the usury laws of North Carolina ? " *Page 606 
3. "Did the defendant, Commercial Credit Company, knowingly take, receive, reserve, or charge the Triplett Lumber Company a greater rate of interest than 6 per cent per annum, as alleged in the amendment to the complaint?"
4. "What amount of penalty, if any, is the plaintiff, C. W. Bundy, receiver for the Triplett Lumber Company, entitled to recover of the defendant, Commercial Credit Company, for usurious interest paid?"
5. "What amount is the Triplett Lumber Company, indebted to the defendant, Commercial Credit Company?"
The jury answered the first issue "Yes," the second issue "No," and the fifth issue "$11,942.70."
Thereupon, judgment was entered decreeing (a) that the plaintiff, receiver, is the owner of the accounts in controversy "free and clear of any lien or claim of the defendant"; (b) that the defendant, Credit Company, is entitled to file an unsecured claim against the receiver for the sum of $11,942.70; (c) that the plaintiff is not entitled to recover anything of the defendant upon the allegations of usury; (d) that the costs be paid by the plaintiff.
From the judgment so rendered both parties appealed, assigning errors.
The determinative questions presented by the record may be stated as follows:
1. Did the trial judge correctly instruct the jury upon the second issue ?
2. Was the defendant, Credit Company, entitled to a lien upon the proceeds realized from the collection of accounts and evidences of indebtedness described in the exhibit?
3. Did the trial judge properly tax the costs? The second issue is as follows: "Was said contract executed by the defendant, Commercial Credit Company, in the State of Maryland in bad faith with the intent and purpose of evading the usury laws of North Carolina?" Upon said issue the judge instructed the jury as follows: (1) "Now, gentlemen of the jury, you will note that the conjunction `and' is used, and not the alternative `or,' and the issue raises the query whether the action was in bad faith and with the intent to evade the usury laws of North Carolina." (2) "If upon consideration of all the evidence it has satisfied you, by its greater weight, that in so doing the Credit Company did act in bad faith and did act with the *Page 607 
intent and purpose of evading the usury laws of North Carolina, then, gentlemen of the jury, it will be your duty to answer the second issue `Yes' as contended for by the plaintiff." (3) "In this connection the court repeats that the phrase `in bad faith' imports that the transaction involved was dishonestly conceived and consummated with knowledge of a fraudulent design or deception. The term `in bad faith' means to mislead and deceive, and before the plaintiff can successfully ask you to answer this issue `Yes,' the plaintiff must satisfy you, by the greater weight of the evidence, that the defendant, Commercial Credit Company, had the intent to deceive the Triplett Lumber Company in the execution of the contract in Maryland, and also that the transaction was dishonestly conceived." (4) "The court charges you that the phrase `in bad faith,' as used in this second issue, imports that the transaction involved was dishonestly conceived and consummated with knowledge of a fraudulent design or deception. The term `bad faith' also means `with intent to mislead or deceive another!'"
The attack made by the plaintiff upon the foregoing instructions is grounded upon the contention that bad faith was improperly defined. The general definition given in Black's Law Dictionary, second edition, is as follows: "The opposite of `good faith,' generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." The Georgia Court in Copeland v. Dunehoo,138 S.E. 267, said: "Counsel for the defendants say that `bad faith involves fraud, deceit, duress, or some such act, and is a state of mind,' and with this we agree." There are several decisions in this State discussing good faith as affecting the jurisdiction of courts. See Wisemanv. Witherow, 90 N.C. 140; Sloan v. R. R., 126 N.C. 487, 36 S.E. 21;Thompson v. Express Co., 144 N.C. 389, 57 S.E. 18; Wooten v. Drug Co.,169 N.C. 64, 85 S.E. 140. In the Sloan case the Court held that jurisdiction is not ousted "except when the sum demanded is so palpably in bad faith as to amount to a `fraud on the jurisdiction.'" In the Wootencase, supra, the Court intimated that good faith not only meant an honest purpose, but that such purpose must appear from the allegations and surrounding facts.
Bad faith cannot be defined with mathematical precision. The ultimate definition of the term would depend upon the facts and circumstances of a given controversy. Certainly, it implies a false motive or a false purpose, and hence it is a species of fraudulent conduct. Technically, there is, of course, a legal distinction between bad faith and fraud, but for all practical purposes bad faith usually hunts in the fraud pack. *Page 608 
The practical question developed by the evidence in this case is whether the Credit Company, impelled by a false and dishonest motive and not by a legitimate business purpose, undertook to have the contract executed in Maryland in order to evade the usury laws of North Carolina and thus oust the jurisdiction of her courts upon a claim of usury. The Court is of the opinion that the instructions were substantially in accordance with the correct principles approved by the authorities.
Upon the second question the plaintiff contends that the covering agreement or assignment contract was in the nature of a chattel mortgage and governed by C. S., 3311, requiring registration, and hence, as the instrument was not recorded, the defendant is entitled to no lien upon the proceeds of collection. The contract provided that the defendant, Credit Company, should purchase from the Lumber Company certain notes or accounts of customers of the Lumber Company. These accounts, notes and other evidences of indebtedness were to be forwarded to the defendant at Baltimore, Maryland, and if they were approved the defendant would immediately pay to the Lumber Company seventy-seven per cent of the face value of the papers. If the payment of the notes and accounts was more than sixty days in default, the Credit Company required the Lumber Company "to buy them back"; that is to say, the Lumber Company would guarantee the payment and either send a check to pay the same to the Credit Company or the amount would be deducted by the Credit Company from the proceeds of the next batch of notes sold, etc. The Credit Company sent the notes for collection to the Lumber Company and did not notify the original debtors that the accounts had been assigned, but the records of the Lumber Company showed at all times that every account or note purchased by the Credit Company had been assigned or sold. When the notes or accounts became due, the Credit Company sent them to the Lumber Company for collection, but when an account was collected by the Lumber Company the president of the Lumber Company said: "We always sent the identical remittance to them for their check. They required us to do that."
Hence the evidence raises the question as to whether the contract between the parties constituted a chattel mortgage or a pledge. If the instrument was in the nature of a chattel mortgage, then registration was required, and the judgment was correct. Upon the other hand, if the contract constituted a pledge of the notes, accounts and evidences of indebtedness as collateral security for a loan of money, then the registration law would not apply. The defendant insisted upon the former appeal, and now insists, that the transactions and course of dealing between the parties constituted an absolute sale of accounts and not a loan. *Page 609 
After a careful reexamination of the entire evidence, the Court sees no reason for changing the opinion expressed in the former appeal that the transaction contemplated a loan of money. The defendant was not engaged in the lumber business, but was primarily engaged in the money business so far as the evidence in this case is concerned. The distinction between a pledge and a chattel mortgage was pointed out in Doak v. Bank, 28 N.C. 309, in the following language: "A mortgage of personal property in law differs from a pledge; the former is a conditional transfer or conveyance of the property itself; and if the condition is not duly performed, the whole title vests absolutely at law in the mortgagee, exactly as it does in a mortgage of lands; the latter, a pledge, only passes the possession, or at most is a special property in the pledge, with the right of retainer, until the debt is paid. A mortgage is a pledge and more, for it is an absolute pledge, to become an absolute interest, if not redeemed in a certain time. A pledge is a deposit of personal effects, not to be taken back, but on payment of a certain sum, by express stipulation, to be a lien upon it."
Certain well defined tests of a pledge have been established by various decisions of this Court. They may be classified broadly as follows: (1) The pledged property must be actually delivered to the pledgee; (2) If the pledged property is returned to the pledgor, it must not be commingled or mixed with other property of the pledgor, but it must be understood that the pledgor holds it as agent for the pledgee; (3) If the pledged property consists of notes, accounts or other evidence of indebtedness, and the pledgee places such accounts or notes in the hands of the pledgor for collection, the funds arising from the collection of the pledged property must be kept separate, distinct and intact. Rose v. Coble, 61 N.C. 517;Bizzell v. Roberts, 156 N.C. 272, 72 S.E. 378; Milling Co. v.Stevenson, 161 N.C. 510, 77 S.E. 676. For example, in Milling Co. v.Stevenson, supra, where there was a pledge of certain merchandise, the Court held that the pledge was invalid "because there was no delivery of the pledged property to the bank to be held by it as security, for `delivery is the essence of a pledge,' and because the goods were intermingled with other goods and had no identifying marks upon them by which they could be distinguished from other goods of like nature belonging to the Stevenson Company," etc. The last utterance upon the subject is contained in Sneeden v. Nurnberger's Market, 192 N.C. 439,135 S.E. 328. The pledge in that case was defeated because the facts disclosed that the pledgee did not retain possession of the accounts, but permitted them to be generally and indiscriminately mixed and intermingled with the accounts and other business transactions of the pledgor. *Page 610 
In the case at bar the notes held by the pledgee were sent to the pledgor for collection. The identity of the property and the identity of the proceeds of collection was carefully safeguarded. Therefore, upon the second question of law, the court is of the opinion that the defendant had not lost its lien upon the proceeds of the collection, and that the judgment of the court denying to the defendant the right of lien was erroneous.
Upon the question of costs, the plaintiff was not entitled to recover costs upon the usury allegation. C. S., 1248. Costs are regulated by C. S., 1241 et seq. This Court held in Patterson v. Ramsey, 136 N.C. 561,48 S.E. 811, that "in order to determine who should pay the costs, we must consider the general result and inquire as to who has, in the view of the law, succeeded in the action." The action was originally instituted to restrain the defendant from collecting certain accounts. The defendant filed an answer asserting a right to collect by virtue of a written contract. Thereupon the plaintiff sought to recover the penalty prescribed by law for usurious loans. As the case developed, the allegations of usury raised the real controversy and issue between the parties. The verdict of the jury has declared the defendant to be the winner in the contest, and, therefore, the costs follow the judgment, and the trial judge correctly taxed the costs against the plaintiff.
Plaintiff's appeal: No error.
Defendant's appeal: Error.