**PENNSYLVANIA THRESHERMEN & FARMER'S MUTUAL CASUALTY IN-SURANCE COMPANY, Plaintiff,**

v.

**Emily Ruth Messer ROBERTSON, David L. Robertson, and Ruth Dalton Messer, Defendants.**

Civ. No. 594.

United States District Court
M. D. North Carolina,
Winston Salem Division.

Dec. 21, 1957.

Jordan, Wright & Henson, Greensboro, N. C., for plaintiff.

Archie Ellege, Clyde Randolph, Jr., I. E. Carlyle and Oren W. McClain, Winston Salem, N. C., for defendants.

HAYES, District Judge.

This is a suit by Pennsylvania Threshermen and Farmer's Mutual Casualty Insurance Company, the insurer, against Emily Ruth Messer (Robertson), the

insured, and Mrs. Ruth Messer who sustained severe personal injuries in an accident in which a car owned by David L. Robertson was being driven by his newly wed wife, Emily Ruth Messer, for a declaratory judgment that the policy issued by the plaintiff to Emily Ruth Messer on her 1947 Dodge did not afford coverage for her against damages arising from her operation of her husband's 1951 Chevrolet.

Mrs. Ruth Messer obtained a default judgment against her daughter in the amount of $43,000 in an action which the plaintiff declined to defend for the insured because the insured refused to sign a non-waiver agreement. The insured notified the plaintiff she had been sued, that she was financially unable to defend, but the plaintiff elected not to defend her.

The policy in issue was in effect from March 21, 1953 to March 21, 1954, naming Emily Ruth Messer as the insured on her 1947 Dodge which she owned and used for business and pleasure. She was single when the policy was issued and resided with her mother at Bassett, Va. where she was employed as an office worker (bookkeeper and secretary). There were no other members of her household, but they had an apartment in her Uncle's home.

On June 23, 1953, the insured was married to David L. Robertson who resided at Winston Salem, N. C., where he was employed. Her husband owned the 1951 Chevrolet (the car subsequently involved in the accident), and they went away on their honeymoon in his car, returning to Bassett, Va., Sunday, July 12. They had not established any marital home (or place of abode). They had decided for the husband to locate a place at Winston so he could retain his job. She was required to give her employer 30 days notice and to train a new employee to do her work.

The insured told her husband that her car was giving trouble about over-heating. He had experience with motor vehicles, being a mechanic. It was the intention of the husband to go to Winston Sunday evening, to be ready and on his job Monday. Before leaving, he attempted to start his wife's car and found the battery was dead. He got a "hot shot" battery and started her car. It was agreed for him to drive her car to Winston Salem to charge the battery and to investigate and correct the motor on account of over-heating. He could not return until the week-end. He left his '51 Chevrolet for her and took her car to repair, fully expecting to return it to her on the week-end and get his car.

This plan was unexpectedly upset through circumstances beyond their control. The insured's father, a Veteran in the U. S. Hospital near Hampton, Va., became seriously ill and an urgent call came for her and her mother to visit him. She then phoned her husband still at Winston not to come to Bassett that week-end as she and her mother had to go to the bedside of her father who had become worse. She then drove his car to Hampton, 300 miles, on Saturday and returned to Bassett Sunday afternoon.

Mrs. Messer received a telephone call Tuesday afternoon that the doctors did not expect her husband to live and wanted her and her daughter to be with him. She called her daughter at her work. She hastened home and they left immediately for Hampton, Va. When they were a few miles beyond South Boston, Va., they came to wet black top highway where Mrs. Robertson lost control of her husband's car, completely wrecking it and sustaining severe injuries herself and very extensive severe and permanent injuries were sustained by Mrs. Messer.

She and her mother were taken to a hospital, both being unconscious and her father died Thursday.

The insured's husband never spent a night with his wife in Bassett. She finally moved to Winston with him and they established a home there sometime in August.

Since the car described in the policy was not involved, the plaintiff insists that there is no coverage. The defendants contend that the automobile in-

volved is covered by Article IV and V of the policy. They are quoted below.[1]

■ The facts here are quite different from the facts in any of the cases relied on by the plaintiff and particularly Aler v. Travelers Indemnity Co., D.C.Md., 92 F.Supp. 620 which is cited with approval in Campbell v. Aetna Casualty and Surety Co., 4 Cir., 211 F.2d 732 and Continental Casualty Co. v. Suttenfield, 5 Cir., 236 F.2d 433. Here the named car was unfit for the insured's normal use of the same. Repairs, shown by uncontradicted evidence, were required before she could make normal use of it. Had she placed it in a garage for such repairs and the accident had occurred while she was using temporarily a car furnished her by the garage, the policy would certainly apply. Does the fact that her husband, a mechanic, took it to repair and return it on the week-end and leaving her his car as a temporary substitute alter the result? He not only had difficulty to start it but had to have the car pushed off two or three times during the week before he got the battery recharged. He also repaired the car by removing the thermostat which was causing the motor to be over-heating. Indeed he made all the necessary repairs and would have returned it to her on the week-end except for the intervening unforeseen circumstances above set forth. She preferred to drive her own car instead of his. There was no evidence of an intention to exchange cars habitually or indiscriminately but all of the evidence points to the temporary use while her car could be restored to her normal use. The temporary character of the use here is indeed more convincing than was the use of the car in American Employer's Ins. Co. v. Maryland Casualty Co., 4 Cir., 218 F.2d 335, 337.

Judge Soper in the above case aptly stated: "When she (wife) was not using her car, Fountain (husband) occasionally used it on business of his own; but the use was occasional and not regular." Although the named car in the above case had been in a bad state of repair from August 1950 until the accident June 4, 1951, and the repair work was being done by the insured himself who drove the car on back roads, the court sustained a ruling that the car in the accident was a temporary substitute automobile. In that case the

1. IV. Automobile Defined, Trailers, Two or More Automobiles, Including Automatic Insurance

(a) Automobile. Except where stated to the contrary, the word "automobile" means:

(1) Described Automobile—the motor vehicle or trailer described in this policy;

(2) Utility Trailer—under coverages A, B and C, a trailer not so described, if designed for use with a private passenger automboile, if not being used with another type automobile and if not a home, office, store, display or passenger trailer;

(3) Temporary Substitute Automobile—under coverages A, B and C, an automobile not owned by the name insured while temporarily used as the substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;"

V. Use of Other Automobiles.

If the named insured is an individual who owns the automobile classified as "pleasure and business" or husband and wife either or both of whom own said automobile, such insurance as is afforded by this policy for bodily injury liability, for property damage liability and for medical payments with respect to said automobile applies with respect to any other automobile, subject to the following provisions:

(a) with respect to the insurance for bodily injury liability, and for property damage liability the unqualified word "insured" includes (1) such named insured, (2) the spouse of such individual if a resident of the same household and (3) any other person or organization legally responsible for the use by such named insured or spouse of an automobile not owned or hired by such other person or organization. Insuring Agreement 111, Definition of Insured, does not apply to this insurance.

(b) This insuring agreement does not apply:

(1) to any automobile owned by, hired as part of a frequent use of hired automobiles by, or furnished for regular use to the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse:"

clause relating to a temporary substitute appears to be identical with the clause in the instant case.

It is contended by the plaintiff that the insured kept her husband's car and used it regularly as her own for approximately 10 days and that this use constitutes regular instead of temporary use. This might have been true had there been an intention to prolong indefinitely the exchange. The facts here negative such an intent. The substitution was temporary and with the definite intent to terminate it upon the return of the car at the week-end.

Having decided that Article IV covers the car involved in the accident, it is unnecessary to consider whether Article V applies. Some of the cases cited above deal with Article V. See also State Farm Mutual Automobile Ins. Co. v. James, 4 Cir., 80 F.2d 802, dealing with who is a member of the "household".

■ Next it is alleged that the insured violated section 1 of conditions by failing to give written notice of the accident to the company or one of its agents. The insured and her mother were first carried to the hospital in South Boston and then Mrs. Messer, because of her grave injuries, was moved to the hospital at Charlottesville, Va. Her condition was critical for several days. Mr. Messer died Thursday and Mrs. Robertson remained in the hospital at South Boston until Saturday when she left to attend her father's funeral. She left immediately for Charlottesville to see about her mother. She returned to Bassett the following Sunday and called plaintiff's agent and told him about the accident and he said he heard about the accident and told her the policy did not cover her husband's car. She asked him to prepare the papers as she lost her glasses and could not see. She never heard from him. Her testimony is corroborated by Attorney Mitchell who asked her about the insurance on September 19, 1953. She told him that the agent said the policy did not cover her husband's car.

An order of suspension was issued on September 10, 1953, notifying her that unless she was covered by insurance the order of suspension would become effective Oct. 19, 1953. On this account she consulted Attorney Mitchell and got him to prepare papers. This explains his specific inquiry about the insurance at time of accident and she tells him that the agent had told her there was no coverage on her husband's car.

■ It is significant that plaintiff's Agent told Mrs. Robertson immediately after the accident that the policy did not cover it, but later when the General Agent in Richmond was consulted that was his position and it has been, and still is, the position of the plaintiff in the present litigation. The denial of coverage dispenses with the filing of written report. What Judge Walker so ably said in Parker & Co. v. Continental Ins. Co., 143 N.C. 339, 342, 55 S.E. 717, 718, is directly applicable here:

"The defendant having denied its liability to the plaintiff on the policy by alleging that there was a violation of the iron-safe clause, whereby the policy became null and void, it cannot now successfully plead the failure of the plaintiff to file proofs of loss and defeat his recovery. It cannot blow hot and cold, so to speak, at one and the same time. When it insists that proofs should have been filed, it asserts of course the validity of the policy, for why file proofs of loss under a void policy? There can be no loss under such a policy. This defense, therefore, is inconsistent with that of noncompliance with the iron-safe clause, which implies that the policy is invalid. The one necessarily excludes the other, and in the sense that an election must be made between them. This is a most just and reasonable rule, and we have held, in accordance with it, that a denial of liability by a fire insurance company dispenses with the necessity of filing proofs of loss. Gerringer v. North Carolina Home Ins. Co., 133 N.C.

407, 45 S.E. 773. If the plaintiff had made the required proof, he would have been met with the denial by the defendant of any liability whatever for the loss. It would be unjust to permit the company thus to trifle with a policyholder. We are not speaking of inconsistent pleas, which are allowable, but of defenses which are, in substance, opposed to each other."

See also Felts v. Shenandoah Insurance Co., 221 N.C. 148, 152, 19 S.E.2d 259.

The law of Virginia seems to be in full accord with the above principle. Columbia Fire Ins. Co. v. Boykin and Tayloe, 4 Cir., 185 F.2d 771, 776, from which this statement appears: "The insurance agent, within the general scope of the business he transacts, is pro hac vice the insurance company. What he knows they know. What he does, they do. He has power to bind and to loose, and no limitation on his power unknown to strangers will bind them."

When the insured sold her Dodge the following November, the insurer's agent got her to surrender her policy in order to expedite her refund. Later when she asked for a copy of the policy and the forms on which to make a report, she experienced considerable delay and difficulty in getting the information. When she did furnish all of the required information, the company reiterated its position that its policy did not cover the car involved in the accident and denied liability. The plea of failure to give notice is without merit.

█ The plaintiff also urges a forfeiture of any rights under the policy because the insured failed to cooperate with the insurer and acted collusively with her mother against the company. The evidence does not warrant such a finding. When Mrs. Messer sued Mrs. Robertson, Mrs. Robertson through her attorney promptly furnished the insurer with copies of Summons and Complaint and asked it to defend on her behalf and offered to cooperate with the company. While plaintiff was deciding whether to participate in the defense, Mrs. Robertson through her attorney obtained a 20-day extension for answering the Complaint. At that time the insurer refused to defend unless she would sign a non-waiver. It was then denying coverage. Her lawyer felt that it would be unwise for her to sign the non-waiver agreement and upon that advice, she refused to sign it. This falls far short of non-cooperation or collusion. State Automobile Ins. Co. of Columbus, Ohio v. York, 4 Cir., 104 F.2d 730; MacClure v. Mutual Accident & Casualty Ins. Co., 229 N.C. 305, 49 S.E.2d 742; Weis v. State Farm Mutual Auto Ins. Co., 242 Minn. 141, 64 N.W.2d 366, 49 A.L.R.2d 688, at page 700. She notified the insurer of her financial inability to defend and could not defend the suit. The insurer elected to abstain from participation and rely on non-coverage.

█ Finally the plaintiff contends that Mrs. Robertson had available two valid defenses: (1) the release signed by Mrs. Messer to permit Mrs. Robertson to get operating license; (2) the joint enterprise and guest law of Virginia. These defenses were available to the plaintiff for it obligated itself to "defend any suit against the insured alleging such injury—and seeking damages on account thereof even if such suit is groundless, false or fraudulent." It necessarily follows that it is now barred by the judgment as to all issues that arose or could have materially arisen in that proceeding. Guaranty Title & Trust Corporation v. Virginia, Carolina Tie & Wood Co., 152 Va. 698, 148 S.E. 815; London Guarantee & Accident Co. v. C. B. White & Bros., 188 Va. 195, 49 S.E.2d 254; Anderson & Co. v. American Mutual Liability Insurance Co., 211 N.C. 23, 188 S.E. 642; Carolina Transportation & Distributing Co. v. American Alliance Ins. Co., 214 N.C. 596, 200 S.E. 411.

Judge Parker quotes with approval in Aetna Casualty and Surety Co. v. Abbott, 4 Cir., 130 F.2d 40 at page 42, the cardinal rule: "It is well settled that a fact or question which was actually and

directly in issue in a former suit, and was there judicially determined by a court of competent jurisdiction, is conclusively settled by the judgment therein so far as concerns the parties to that action and persons in privity with them, and cannot be again litigated in any future action between the parties or privies in the same or any other court upon either the same or a different cause of action." To the same effect, see 46 C.J.S. Insurance § 1251.

██ The defendants insist that the insurer, in bad faith, refused to defend, and especially, was negligent, in failing to settle the claim against the insured when it had the opportunity to do so for $10,000, and that it should now be held liable for the judgment of $43,000, in spite of the limitation in the policy of $25,000 for one person. The evidence does not support this contention. The insurer, in good faith, though mistakenly, relied on non-coverage. For this reason plaintiff's liability to Mrs. Messer is limited to $25,000, with interest thereon from this date and the costs of this action. Henry v. Nationwide Insurance Company, D.C., 139 F.Supp. 806.