277 So.2d 890

Maudine D. Neese CONWAY

v.

TITLE INSURANCE COMPANY,
a corporation.

SC 78.

Supreme Court of Alabama.

May 10, 1973.

Samuel L. Stockman, Mobile, for appellant.

Charles B. Bailey, Jr., Mobile, for appellee.

HARWOOD, Justice.

This is an appeal from a decree of the Circuit Court of Mobile County, Alabama, adjudging and decreeing in substance that any damage suffered by the appellant here was not within the coverage of a title insurance policy issued by Title Insurance Company to the appellant, Mrs. Maudine D. Neese Conway.

The evidence introduced below amply tends to show that on 7 May 1965, this appellant purportedly foreclosed a mortgage given by Gulf Development Company to secure a loan made to Gulf by the appellant. The land covered by the mortgage included a large number of lots in two subdivisions being developed by Gulf, including Lot 8 of the First Unit of Gulf Hills subdivision. Lot 8, with the house thereon,

had been sold by Gulf to Francis Andrews in 1957 for $29,500.00. Andrews had made improvements on the house and lot amounting to $5,500.00.

As Gulf would sell the lots in its subdivision they would routinely be released from the mortgage upon the payment of $1,200.00 to Mrs. Conway, the mortgagee. Every lot sold by Gulf in the subdivisions had been so released except Lot 8 sold to Andrews. The appellant Conway was fully aware of this releasing procedure. Unfortunately for Andrews he neglected to obtain a release of Lot 8 from the mortgage upon purchasing it.

Mrs. Conway's husband, who is an attorney and was her agent, admitted that no attempt was made to give Andrews actual notice of the foreclosure sale because of fear that Andrews would seek to obtain a belated release of his lot from the mortgage by the payment of $1,200.00. The evidence also showed that Mrs. Conway became aware of the sale of Lot 8 to Andrews and that his lot had not been released from her mortgage sometime prior to 8 August 1964, and that she became personally aware that Andrews was occupying the home on Lot 8 when in August 1964 she moved into a house in Gulf Hills subdivision located about a block from Andrews' house on Lot 8.

Gulf being in default on the mortgage, Mrs. Conway, on 7 May 1965, purportedly foreclosed the Gulf mortgage and obtained a foreclosure deed, having bid $50,000.00 at the mortgage sale. The next day she procured from Title Insurance Company the policy of title insurance here sued on.

The purported foreclosure sale was set aside by the Circuit Court of Mobile County because of the misconduct of appellant or her agents in attempting to conceal from Andrews the fact that he could clear his title by paying $1,200.00 for a release of his property from the mortgage. This decree was affirmed by this court on 28 May 1970, on the basis that the appellant engaged in conduct deliberately calculated to conceal from Andrews the existence of a mortgage lien upon his home, i. e., Lot 8, and also that Mrs. Conway had attempted to pervert the power of sale contained in the mortgage from its legitimate purpose and to use it for the purpose of oppressing the debtor and thereby obtain the property for herself. See Conway v. Andrews, 286 Ala. 28, 236 So.2d 687.

This same title defect was present and known to the appellant or her agents at the time she procured the policy of title insurance from the appellee.

This appellant, still seeking to obtain benefits from her conduct already adjudged wrongful in Conway v. Andrews, supra, brought an action at law for damages against Title Insurance claiming she had suffered damages resulting from a defect in the title to the property which had been insured by Title Insurance.

On motion of Title Insurance this suit was transferred to equity. Thereafter Title Insurance filed its bill in equity praying that the court declare that the defect against the property insured, insofar as Lot 8 was concerned, was created by Mrs. Conway, and there was no liability on the part of Title Insurance Company under the policy, and also that Mrs. Conway should not recover under the policy here involved because the defect in the title was known to Mrs. Conway and was not of public record, and had never been made known to the insurer in writing, and further that such defect resulted from the fact that Andrews was in possession of the property at the time the policy was issued.

The policy issued to Mrs. Conway, and here being considered, insured her against loss or damage not exceeding $50,000.00, which she could sustain by reason of "any defect in, or lien, or encumbrance on the title to the estate or interest covered hereby in the land described or referred to in Schedule A, existing at the date hereof, not * * * excluded from coverage in Schedule B, existing at the date hereof, * * * subject to the provisions and Schedules A and B, and to the Conditions

and Stipulations hereto attached; all as of the effective date of this policy."

It was stipulated in Schedule B that:

"This policy does not insure against loss or damage by reason of the following:

\*     \*     \*     \*     \*     \*

"2. Rights of parties in possession."

Under the "Exclusions from Coverage" provisions found in Schedule B, it is provided in paragraph 2(d):

"Defects, liens, encumbrances, adverse claims against the title as insured or other matters (1) created, suffered, assumed or agreed to by the insured; or (2) known to the insured either at the date of this policy or at the date such insured acquired an estate or interest insured by this policy and not shown by the public records, unless disclosure thereof in writing by the insured shall have been made to the company prior to the date of this policy; or (3) resulting in no loss to the insured; \* \* \*"

After a study of this record, it is our conclusion that the findings of the Chancellor are amply supported by the evidence, and that the decretal portion of his decree correctly applied the governing legal principles to the facts found.

■ It is not uncommon for title insurance policies to contain clauses excluding or excepting from coverage "defects, liens, encumbrances, or adverse claims against the title as insured, or other matters" when such defects are created, suffered, agreed to or assumed by the insured, and are known to the insured at the date of the policy, but are not shown by the public records, nor disclosed to the insurer by the insured in writing.

Such limiting conditions are not unreasonable, are set forth in clear and unambiguous language, and have been recognized repeatedly. Lawyers Title Ins. Corp. v. Research Loan and Investment Corp., 8 Cir., 361 F.2d 764; Alabama Title and Trust Co. v. Millsap, 5 Cir., 71 F.2d 518. Such exceptions and limiting provisions either in the language of the present policy, or in language of similar import, have been held effective because of the misconduct of the insured in Hansen v. Western Title Ins. Co., 220 Cal.App.2d 531, 33 Cal.Rptr. 668, 98 A.L.R.2d 520; First National Bank and Trust Co. v. New York Title Ins. Co., 171 Misc. 854, 12 N.Y.S.2d 703; Rosenblatt v. Louisville Title Co., 218 Ky. 714, 292 S.W. 333; Feldman v. Urban Commercial, Inc., 78 N.J.Super. 520, 189 A.2d 467; Brick Realty Co. v. Guarantee and Trust Co., 161 Misc. 296, 291 N.Y.S. 637. See also annotation in 98 A.L.R.2d pp. 527 et seq.

■ Appellant's assignments of error 1, 2, and 3, are all to the effect that the lower court erred in decreeing that appellant's loss was not a loss against which the appellant was insured by title policy. We find no merit in these assignments.

Appellant's assignment of error 4 is to the effect that the court erred in decreeing that the appellant (Mrs. Conway) was not entitled to relief prayed for in her cross bill filed in the equity proceedings.

Essentially, the cross bill is merely a suit on the policy here sued on, and prays that the court find and decree that Title Insurance Company is liable under the policy, and further prays that damages be awarded the cross complainant in the amount of $60,000.00.

Relief under the cross bill would be dependent upon the insured (Mrs. Conway) being afforded coverage under the title policy; if there was no coverage, then the relief sought in the cross bill must of necessity fail.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX, and FAULKNER, JJ., concur.