NATIONAL MORTGAGE CORPORATION v. AMERICAN TITLE INSURANCE
COMPANY

No. 7815SC587

(Filed 19 June 1979)

1. **Insurance § 148— title insurance—defect not created by insured—denial of coverage improper**

    In an action to recover under a title insurance policy issued by defendant, coverage was not excluded by language in the policy that it did not insure against loss or damage by reason of "Defects, liens, encumbrances, adverse claims against the title as insured or other matters (1) created, suffered, assumed or agreed to by the insured claiming loss or damage . . ." since the defect in the title under consideration occurred because of innocent conduct by the insured in authorizing an improper disbursement of loan proceeds.

2. **Insurance § 148— title insurance—no bad faith of insured—denial of coverage improper**

    The trial court erred in denying recovery under a title insurance policy based on a policy provision that "Pending disbursement of the full proceeds of the loan secured by the Deed of Trust . . . this policy insures only to the extent of the amount actually disbursed, but increases as each disbursement is made in good faith and without knowledge of any defects in, or objections to, the title, up to the face amount of the policy" since there was no evidence in the record to suggest any bad faith conduct on the part of the plaintiff, its conduct in authorizing an unusual procedure for disbursement of loan proceeds being at the most negligent conduct.

3. **Insurance § 148; Estoppel § 8— title insurance—equitable estoppel—insufficiency of evidence**

    Equitable estoppel did not apply to preclude plaintiff from recovering under a title insurance policy where plaintiff lender initially purchased the policy precisely to insure the priority of its lien against unforeseen defects; a defect arose because of the unlawful conduct of a third party to whom plaintiff had entrusted, wisely or not, much of its investment; any improper conduct on the part of plaintiff was at most negligent management of its funds; and plaintiff was not reaping benefits from any misconduct but would, should it be entitled to recover, merely be recovering the balance due of the loan made to the third person.

4. **Insurance § 148— defense by insurer—reservation of rights**

    An insured is not required to accept a defense by insurer rendered under a "reservation of rights," and the insurer's conditional tender of defense does not absolve it of its contractual duty to defend an action for loss within the coverage of the policy.

    Judge CLARK dissenting.

APPEAL by plaintiff from *McKinnon, Judge.* Judgment entered 28 January 1978 in Superior Court, ORANGE County. Heard in the Court of Appeals 26 March 1979.

National Mortgage Company, a Delaware corporation with its principal offices located in Washington, D. C., initiated this action 13 April 1976 against American Title Insurance Company, a Florida corporation, to recover, under the terms of a title insurance policy issued by defendant, an amount equal to the balance due on a note secured by a certain deed of trust and the costs of defending an action to prohibit foreclosure under that deed of trust. This and several other lawsuits arose out of a transaction between National Mortgage Company and Jonas W. Kessing Company. Plaintiff and Jonas W. Kessing Company (Kessing) entered into a limited partnership known as Village Associates of Chapel Hill wherein plaintiff, as limited partner, made a construction loan to Kessing, as a general partner and a limited partner, for a proposed project to be constructed on the property of M. A. Abernethy and wife, Minna K. Abernethy, in downtown Chapel Hill. Construction was never begun, and Kessing subsequently defaulted. Plaintiff thereafter was prohibited from foreclosing under its deed of trust on the Abernethy property when its deed of trust was declared to have conveyed "no valid lien, encumbrance, secured interest, or interest of any kind" in a previous action entitled *M. A. Abernethy and wife v. National Mortgage Corporation et al., defendants, and National Mortgage Corporation, third party plaintiff v. American Title Insurance Company, third party defendant,* in Orange County, No. 74CvS68.

The facts of this case are in all material aspects undisputed. The essential facts are: On 30 June 1969, National Mortgage Corporation consummated a $250,000 loan to Jonas Kessing Company secured by a deed of trust on three tracts of land, Tracts I and II consisting of a vacant lot on Franklin Street in Chapel Hill owned by M. A. Abernethy and wife, Minna K. Abernethy. The defendant in this action issued an interim title insurance binder to plaintiff insuring the title to Tracts I and II as of 30 June 1969, subject to certain terms set forth in that binder. On 8 July 1969, M. A. Abernethy and wife, Minna K. Abernethy, executed a "Subordination Agreement" purportedly giving plaintiff a first lien on the fee in the property in order to induce plaintiff to lend money to Kessing for the erection of shops and a theater on the property then held by Kessing as assignee under a lease from the Abernethys. Thereafter the defendant, in consideration of the payment of the $487.50 premium, issued its policy of title in-

surance in favor of plaintiff insuring its first lien status on the property described in the deed of trust, subject to certain terms and conditions.

Disbursement of the loan proceeds was authorized by plaintiff to be made according to the schedule proposed by Jonas W. Kessing. The first $125,000 was to be used to pay necessary closing costs and to cancel a second mortgage on the Castilian Apartments property, the third tract of land securing the deed of trust. The balance of the proceeds was then to be paid to Village Associates of Chapel Hill "to be placed in an interest-bearing account in a local bank in Chapel Hill" with periodic payments to the contractor of 90% of his expenses upon approval by the supervising architect. The attorney employed by Kessing to perform the legal services necessary to obtain the loan, Ted R. Reynolds of Reynolds and Farmer of Raleigh, recognized that the proposed disbursement was unusual for a construction loan and contacted Mr. Green, the president of plaintiff, to so inform him. Mr. Green, nevertheless, authorized disbursements as proposed, and Mr. Reynolds completed the disbursements 24 July 1969.

No construction or improvement was ever begun on the Abernethy property, and Jonas W. Kessing apparently misappropriated the $125,000 disbursed to the limited partnership Village Associates of Chapel Hill. The loan came into default, and foreclosure was commenced by National Mortgage Corporation. The loan transaction was declared to have been usurious and non-interest-bearing in the decision of *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971), because of the limited partnership arrangement. Foreclosure was prevented when judgment was entered in favor of the Abernethys in the related action mentioned above declaring the subordination agreement null and void and ruling that the deed of trust conveyed no security interest in the Abernethy property. The unpaid principal due on the loan remains $79,282.26. The Abernethy lot had a fair market value of $120,000 as of 15 January 1974.

National Mortgage Corporation provided its own defense in the previous action initiated by the Abernethys. American Title Insurance Company's tender of defense of the action with "reservation of rights" was rejected by National Mortgage Corporation,

which thereafter filed a third party complaint against American Title Insurance Company. That third party action was voluntarily dismissed by plaintiff and reinstituted in the form of the case under consideration.

The trial court in this case determined that the irregular disbursement scheduled authorized by National Mortgage Corporation caused the loss suffered by plaintiff, thus excluding coverage under the policy. The court's determination was based on certain language excluding loss or damage by reason of "[d]efects, liens, encumbrances, adverse claims against the title as insured or other matters (1) created, suffered, assumed or agreed to by the insured claiming loss or damage." Furthermore, the trial court determined that the disbursements of the funds under those conditions was not a disbursement made in "good faith" as required by the policy.

From entry of summary judgment in favor of defendant, plaintiff appeals.

*Allen, Hudson and Wright, by James Allen, Jr., for plaintiff appellant.*

*Midgette, Page and Higgins, by Keith D. Lembo, for defendant appellee.*

MORRIS, Chief Judge.

Plaintiff's assignment of error presents two questions on appeal. First, did certain language of the policy of title insurance exclude coverage under the facts of this case? Second, is the defendant insurer liable for expenses incurred by plaintiff in defense of the Abernethy action brought to declare the deed of trust invalid?

## Exclusions

[1] Defendant relies on two separate provisions of the policy of title insurance to exclude coverage for plaintiff's losses. Defendant first relies on language in the "American Land Title Association Standard Loan Policy" outlining conditions and stipulations appearing on page three of the policy:

"3. *Exclusions from the Coverage of this Policy.* This policy does not insure against loss or damage by reason of the following: . . .

(d) Defects, liens, encumbrances, adverse claims against the title as insured or other matters (1) created, suffered, assumed or agreed to by the Insured claiming loss or damage. . . ."

Defendant's contention is that plaintiff's improper disbursement of the loan proceeds was the causal factor in the loss of the lien of the deed of trust. They point out that the lien was declared ineffectual by the judgment in the Abernethy case for the reason that the proceeds were not disbursed for the purpose of erecting permanent improvements. In that case, the owners of the fee were found to have subordinated their fee interest in the real estate only to the extent that the loan proceeds were disbursed in payment for the erection of permanent improvements. Plaintiff, on the other hand, contends that the exclusion applies only if the act causing the loss is the result of some dishonest, illegal or inequitable dealing by the insured. Plaintiff asserts that protection from loss due to the possible negligent creation of a defect by the insured is one of the reasons for purchasing title insurance. Plaintiff concedes that recovery would not be permitted if the plaintiff had knowingly created the title defect.

Although there were apparently no controlling cases in North Carolina, the overwhelming weight of authority supports plaintiff's position that the policy language does not exclude coverage for losses suffered by this insured. A fundamental rule in the interpretation of insurance policies requires that an ambiguity in the words of the policy must be resolved in favor of the insured. *Grant v. Insurance Co.*, 295 N.C. 39, 243 S.E. 2d 894 (1978); *Pleasant v. Insurance Co.*, 280 N.C. 100, 185 S.E. 2d 164 (1971); *Insurance Co. v. Insurance Co.*, 269 N.C. 358, 152 S.E. 2d 513 (1967). In applying a similar rule of construction, the courts in other jurisdictions have consistently concluded that policy language essentially identical to that of the policy language quoted above excludes coverage for losses incurred because of the insured's own conduct only when it is a result of some dishonest, illegal, or inequitable dealings by the insured. *See generally* Annot., 98 A.L.R. 2d 527 (1964). Where a defect in the title occurs

because of innocent conduct by the insured, coverage should not be excluded by the language embodied in the "Conditions and Stipulations" of section 3(d) of the policy before the Court. *See, e.g., Laabs v. Chicago Title Insurance Company,* 72 Wis. 2d 503, 241 N.W. 2d 434 (1976); *Arizona Title Insurance & Trust Company v. Smith,* 21 Ariz. App. 371, 519 P. 2d 860 (1974); *Hansen v. Western Title Insurance Company,* 220 Cal. App. 2d 531, 33 Cal. Rptr. 668 (1963). On the other hand, where the insured has been involved in a fraudulent or unconscionable scheme, recovery should be denied based on similar policy language. *See, e.g., Keown v. West Jersey Title and Guaranty Company,* 161 N.J. Super. 19, 390 A. 2d 715 (1978); *Conway v. Title Insurance Co.,* 291 Ala. 76, 277 So. 2d 890 (1973); *Feldman v. Urban Commercial, Inc.,* 87 N.J. Super. 391, 209 A. 2d 640 (1965); *Taussig et al. v. Chicago Title & Trust Co.,* 171 F. 2d 553 (7th Cir. 1948); *First Nat'l Bank & Trust Co. v. New York Title Insurance Company,* 171 Misc. 854, 12 N.Y.S. 2d 703 (1939).

The precise meaning of the phrase "created, suffered, assumed or agreed to" has been considered in the recent case of *Arizona Title Insurance & Trust Company v. Smith, supra.* That case, in accordance with the unanimity of authority, holds that the word "created" requires an affirmative act deliberately bringing about the defect. The word "suffered" implies a failure to exercise a power with the intention that the defect be created. *Accord., Hansen v. Western Title Insurance Company, supra.* The terms "assumed" or "agreed to" appear clearly inapplicable to the conduct of the plaintiff in the case at bar. The record is uncontradicted that the lender specifically demanded that as a precondition to the loan that the fee owners subordinate their interest to that secured by the insured's deed of trust. The insured, in this case, cannot be said to have "assumed" or "agreed to" a defect (the failure of the subordination agreement to remain effective) when it specifically sought to have the fee interest subordinated to its leasehold interest in order to obtain the loan and the title insurance. It follows that plaintiff has not "created, suffered, assumed or agreed to" the defect in title invalidating plaintiff's deed of trust by authorizing an improper method of disbursement. Mere negligence does not constitute "creation". *Keown v. West Jersey Title & Guaranty Co., supra.*

[2] Schedule B of the title insurance policy excludes loss or damage by reason of failure to comply with certain conditions added by the insurer to apply specifically to the transaction under consideration. The fifth condition provides in typewritten form:

> "5. Pending disbursement of the full proceeds of the loan secured by the Deed of Trust described in Schedule 'A' hereof, this policy insures only to the extent of the amount actually disbursed, but increases as each *disbursement is made in good faith* and without knowledge of any defects in, or objections to, the title, up to the face amount of the policy." (Emphasis added.)

The trial court relied on the foregoing underscored policy language as an additional or alternative ground for denying recovery. The correctness of that judgment depends upon the correct interpretation to be given the phrase "good faith" in contradistinction to "bad faith". The Court in *Bundy v. Credit Co.*, 202 N.C. 604, 163 S.E. 676 (1932), in the process of reviewing a jury instruction defining "in bad faith", offered the following explanation of the phrase:

> "Bad faith cannot be defined with mathematical precision. . . . Certainly, it implies a false motive or a false purpose, and hence it is a species of fraudulent conduct. Technically, there is, of course, a legal distinction between bad faith and fraud, but for all practical purposes bad faith usually hunts in the fraud pack." 202 N.C. at 607, 163 S.E. at 677; *see also Polikoff v. Service Co.*, 205 N.C. 631, 172 S.E. 356 (1934).

That court approved the trial court's instruction stating that "the phrase 'in bad faith' imports that the transaction involved was dishonestly conceived and consummated with knowledge of a fraudulent design or deception." We find no evidence in the record to suggest any bad faith conduct on the part of this plaintiff. To the contrary, it appears that plaintiff was the object of bad faith conduct on the part of Jonas W. Kessing who breached the agreement for disbursement of funds as proposed in his letter to the plaintiff. Plaintiff's conduct in authorizing the unusual disbursement procedure is at most negligent conduct. Defendant has failed to satisfy his burden of placing plaintiff within the fifth exclusion contained in the policy. *See Brevard v. Insurance Co.*, 262 N.C. 458, 137 S.E. 2d 837 (1964) (burden on insurer to show exclusion).

## Equitable Estoppel

[3] Additionally, defendant urges this Court to apply the doctrine of equitable estoppel to prevent what it characterizes as an opportunity for the plaintiff to reap benefits from its own improper conduct at the expense of the defendant, who is characterized as an innocent party. We cannot agree that the record supports defendant's characterization of the transaction, and we find no grounds for the application of equitable estoppel. Initially, plaintiff purchased the policy of title insurance precisely to insure the priority of its lien against unforeseen defects. The defect arose because of the unlawful conduct of a third party to whom plaintiff had entrusted, wisely or not, much of its investment. Any improper conduct on the part of the plaintiff was at most negligent management of its funds. Furthermore, plaintiff is not reaping benefits from any misconduct. The unpaid balance due on the loan remains at $79,282.26, excluding interest in accordance with *Kessing v. Mortgage Corp., supra.* Should plaintiff be entitled to recover, it would merely be recovering the balance of the loan made to Kessing. Finally, it can hardly be said that defendant in this action is "innocent". Defendant is in the business of insuring against the risk of loss incurred through unanticipated defects in title to real property.

The basis of the doctrine of equitable estoppel was well expressed in the case of *Boddie v. Bond,* 154 N.C. 359, 70 S.E. 824 (1911). The elements thereafter were outlined as follows:

"In order to constitute an equitable estoppel, there must exist a false representation or concealment of material fact, with a knowledge, actual or constructive, of the truth; the other party must have been without such knowledge, or, having the means of knowledge of the real facts, must not have been culpably negligent in informing himself; it must have been intended or expected that the representation or concealment should be acted upon, and the party asserting the estoppel must have reasonably relied on it or acted upon it to his prejudice." 154 N.C. at 365-66, 70 S.E. at 826-27.

The Court treated the doctrine as a "species of fraud", although it is apparent that neither bad faith, actual fraud, nor intent to deceive is necessary to invoke equitable estoppel. *Watkins v. Motor Lines,* 279 N.C. 132, 181 S.E. 2d 588 (1971). The basis of the

principle, however, is the taking of inconsistent positions which essentially amount to a fraud upon the party who has relied to its detriment upon the original conduct. *See Hamilton v. Hamilton*, 296 N.C. 574, 251 S.E. 2d 441 (1979); *Bizzell v. Equipment Co.*, 182 N.C. 98, 108 S.E. 439 (1921). The facts of this case simply present no grounds for the application of the doctrine of equitable estoppel. Defendant cites *Feldman v. Urban Commercial, Inc.*, 78 N.J. Super. 520, 189 A. 2d 467 (1963), as authority for applying equitable principles to preclude plaintiff's recovery. The defect in title in that case arose upon the application of the equitable doctrine of unclean hands by which the trial court barred plaintiff's action for foreclosure under the mortgage, because the mortgage itself was declared by the court to amount to an unconscionable scheme by plaintiff improperly to shift the major portion of the risk of its investment to the redevelopment agency. Here, as noted above, plaintiff has not affirmatively created his own defect. The conduct of plaintiff's partner, wrongful as against plaintiff as well as the fee owners of the property, created the defect in plaintiff's title. Moreover, the doctrine of unclean hands applied in *Feldman* is inapplicable here where plaintiff is not seeking an equitable remedy against defendant. *Cf. Trust Co. v. Realty Corporation*, 215 N.C. 526, 2 S.E. 2d 544 (1939).

### Expenses of Defending Abernethy Case

[4] The record indicates and plaintiffs concede that there was no absolute refusal on the part of the insurer to defend the action. American Title Insurance Company offered to defend the suit with a "reservation of rights". National Mortgage Corporation, however, asserted that such a reservation would create a possible conflict of interest since there was a dispute between insurer and insured as to whether there was coverage for the loss under the policy. National Mortgage Corporation chose to defend itself and cross-claimed against American Title Insurance Company for indemnity and expenses incurred in defending the Abernethy case. That cross-claim was subsequently dismissed voluntarily and reinstituted in the form of the present action.

The general rules applying to the duty of the insurer to defend are essentially undisputed. The duty of the insurer to defend under an indemnity policy arises if the facts alleged, if true, impose liability on the insured within the coverage of the policy.

---

---

*Insurance Co. v. Insurance Co., supra; see also Strickland v. Hughes*, 273 N.C. 481, 160 S.E. 2d 313 (1968). *See generally* 9 Appleman, Insurance Law and Practice § 5216. A breach of the insurance contract occurs if the insurer wrongfully refuses to defend on the grounds that the claim is not within the policy's coverage, and the insurer becomes liable for all damages resulting to the insured because of the breach of contract, including all expenses incurred in defending the action. *Insurance Co. v. Insurance Co.*, 277 N.C. 216, 176 S.E. 2d 751 (1970); *see generally* Annot., 49 A.L.R. 2d 694 (1956). However, in the present case the insurer did not unconditionally refuse to defend the action, but insisted that it would defend only with a reservation of rights. Such a reservation of rights is generally required to prevent the insurer from being estopped to deny coverage under the policy once the defense is conducted with knowledge of facts taking the loss outside the coverage of the policy. *Early v. Insurance Co.*, 224 N.C. 172, 29 S.E. 2d 558 (1944); *see generally* Annot., 38 A.L.R. 2d 1148 (1954); Note, 68 Harv. L. Rev. 1436 (1955). We are faced with the question whether the insurer is absolved from his duty to defend, and the liability for the expense thereof, by tendering a defense of the action under reservation of its rights after it is finally determined that the loss was within the coverage of the policy.

It has been held that the insured is not required to accept a conditional tender of defense of an action. This result has generally been reached where the courts have refused to require an insured to sign a "non-waiver agreement". *Babcock & Wilcox Company v. Parsons Corporation*, 430 F. 2d 531 (8th Cir. 1970); *Hawkeye Casualty Co. v. Stoker*, 154 Neb. 466, 48 N.W. 2d 623 (1951). The "non-waiver agreement" is a device intended to have the same legal effect as a "reservation of rights". The distinction is that the former takes the form of a bilateral agreement, whereas the latter is merely a unilateral notice given by the insurer, that the insurer intends to proceed without waiving its right ultimately to contest coverage. *See Motorists Mutual Insurance Co. v. Trainor*, 33 Ohio St. 2d 41, 294 N.E. 2d 874 (1973). Such a refusal is sometimes justified because of the insured's fear that the insurer may not be motivated to provide a vigorous defense despite its duty to use good faith in its undertaking.

The insurer who refuses to defend an action against its insured where coverage is in dispute does so at its own risk. *See*

Mortgage Corp. v. Insurance Co.

7A Appleman, Insurance Law & Practice, § 4686. The insurer's conditional tender of defense does not absolve it of its contractual duty to defend an action for loss within the coverage of the policy. Just as an insured is not required to accept a defense conditioned upon entering into a "non-waiver agreement", he is not required to accept a defense rendered under a "reservation of rights". *Sears v. Interurban Transportation Co.*, 14 La. App. 343, 125 So. 748 (1930). *See also Pennsylvania Threshermen & Farmer's Mutual Casualty Insurance Co. v. Robertson*, 157 F. Supp. 405 (M.D.N.C. 1957); *United States Fidelity & Guaranty Co. v. Baker*, 24 Ala. App. 274, 134 So. 894 (1931). *Compare, Insurance Co. v. Harrison-Wright Co.*, 207 N.C. 661, 178 S.E. 235 (1935). Plaintiff was entitled to reject the conditional offer by the defendant to defend the Abernethy case and still seek indemnity for the costs of defending that action.

The judgment of the trial court with respect to both coverage under the policy and liability for the cost of defending the Abernethy case is

Reversed.

Judge ARNOLD concurs.

Judge CLARK dissents.

Judge CLARK dissenting.

Plaintiff made a construction loan of $250,000 to Village Associates, with knowledge that these funds were borrowed for the specific purpose of the construction of improvements on the Abernethy lots. Plaintiff knew that the construction of improvements was a condition contemplated by the lease agreement and the subordination agreement. The lease agreement provided in pertinent part:

"10a. The Lessor agrees to subordinate and subject its fee simple title in and to the premises to the lien of any mortgages or deeds of trust placed on the premises by the Lessee to secure construction and permanent financing, including primary financing, for the erection, furnishing and equipping of improvements on the premises provided that under no circumstances shall the maturity date of any such mortgage or deed of trust extend beyond the fifty-ninth year of the

term hereof, and at the request of the Lessee will execute any mortgage deed of trust or subordination agreement to effectuate the provisions of this paragraph.

10b. The Lessor shall not be personally responsible for the payment of any such indebtedness secured by the Lessee for the erection of improvements on the premises, and that such financing shall not exceed the actual cost of the aforementioned improvements and equipment."

On 12 July 1969, Jonas W. Kessing wrote a letter to Richard F. Downham, Attorney for the plaintiff, which stated that the total loan proceeds would be paid immediately to Village Associates, $125,000 to be placed in an account to be held for construction of the buildings on the Abernethy lot, the remainder to be disbursed for closing costs and to pay the second mortgage on the Castilian Apartments. Mr. Downham responded on 14 July 1969, to the effect that the disbursement schedule was acceptable to plaintiff. On 24 July 1969, Reynolds, the Attorney for Jonas W. Kessing Co. and agent for the plaintiffs, telephoned the plaintiff's offices and informed the president of National Mortgage Co., Mr. Green, that the disbursement schedule was unusual in that it disbursed all the funds prior to beginning construction. Mr. Green informed Reynolds to proceed with the disbursements.

The plaintiff clearly agreed to disburse funds for purposes other than the construction of buildings on the Abernethy lot with knowledge that this was contrary to the express terms of the lease between Kessing and the Abernethys and the terms of the subordination agreement. The plaintiff also agreed to the unorthodox disbursement scheme which endangered the security of the mortgage on the Abernethy property.

In *Brick Realty Corp. v. Title Guarantee & Trust Co.*, 161 Misc. 296, 291 N.Y.S. 637 (1936), the court held that a title insurance company was not obligated to defend a suit brought by the mortgagor's wife in which she claimed that the mortgagor fraudulently schemed to wipe out her dower rights. The court noted that the title insurance company did not insure the defendant against the consequences of his own acts. *See Feldman v. Urban Commercial, Inc.*, 87 N.J. Super. 391, 209 A. 2d 640 (1965). From the facts before us, the conclusion is inescapable that the defect in the title arose because plaintiff agreed to distribute

funds for purposes other than construction of buildings on the Abernethy lots in violation of the terms of the lease and subordination agreement and because plaintiff jeopardized its security by agreeing to the unusual disbursement scheme. The defendant insurance company did not insure plaintiff against the consequences of its own reckless acts, and was therefore not liable for any loss occasioned thereby.