JAMES M. PLEASANT, ADMINISTRATOR OF THE ESTATE OF
E. L. PLEASANT v. MOTORS INSURANCE COMPANY

No. 111

(Filed 15 December 1971)

1. Insurance §§ 73, 76— automobile insurance — loss of automobile by
intentional setting on fire — accidental loss

The intentional setting on fire of an automobile by the son of
the insured under an automobile liability policy is held a "direct
and accidental loss" within the terms of the policy.

2. Insurance § 73— automobile insurance — meaning of "accidental"

The use of the word "accidental" to limit the losses in automobile
insurance policies is subject to more than one reasonable meaning.

3. Insurance § 73— automobile insurance — meaning of "accidental" —
resolution of ambiguity

When words such as "accidental" become ambiguous as applied to
the various causes of loss set forth in an insurance policy, the am-
biguity will be construed against the insurer.

4. Insurance § 73— automobile insurance — accidental loss — loss caused
by intentional act of another

An automobile insurance policy providing for payment of acci-
dental loss or damage to the automobile includes loss caused by the
intentional act of another when in the line of causation the act, from
the standpoint of the policyholder or named insured, is unintended,
unexpected, unusual, or unknown.

5. Actions § 5; Insurance § 76— automobile fire insurance — intentional
burning of automobile by insured's son — administrator's recovery un-
der the policy

The administrator of a named insured may recover under an auto-
mobile insurance policy for the loss of an automobile intentionally
set on fire by the insured's son.

APPEAL by plaintiff pursuant to G.S. 7A-30(2) from the
decision of the North Carolina Court of Appeals (12 N.C. App.
236), affirming decision of *Lyon, J.,* at the 30 November 1970
Civil Session of HARNETT District Court.

This action was instituted in 1962 by E. L. Pleasant. He
died in 1963 and James M. Pleasant, his duly qualified adminis-
trator, was substituted as plaintiff in this action.

The stipulated facts show that defendant issued to E. L.
Pleasant, as named insured, a policy of insurance numbered
96-75209 covering a 1960 Corvair automobile owned by him.

The policy obligated defendant insurance company to pay for loss caused, among other things, by fire or lightning. The period of coverage of the policy was from 30 August 1960 to 30 February 1962.

The policy contained these definitions:

"Loss" means direct and accidental loss of or damage to (a) the automobile, including its equipment, or (b) other insured property;

"Named insured" means the individual named in Item 3 of the declarations and also includes his spouse, if a resident of the same household;

E. L. Pleasant, the named insured, and other members of his household occasionally drove the automobile. Bobby Pleasant, the son of plaintiff's intestate, lived in the home of his father and was the primary operator of the Corvair automobile.

Bobby Pleasant and three of his associates conspired to burn the insured automobile for the purpose of collecting insurance proceeds which they hoped to use to purchase a convertible automobile. On or about 17 February 1961 they intentionally burned and destroyed the Corvair automobile insured by defendant. The resulting damages amounted to $1,900. Bobby Pleasant was thereafter convicted in the criminal court of the burning of the automobile.

The trial judge found facts and concluded as a matter of law that paintiff was not entitled to recover any amount of defendant as a result of the destruction of the Corvair automobile. Plaintiff appealed.

*Bryan, Jones, Johnson, Hunter & Greene, by K. Edward Greene, for plaintiff appellant.*

*Teague, Johnson, Patterson, Dilthey & Clay, by Grady S. Patterson, Jr., and Paul L. Cranfill for defendant appellee.*

BRANCH, Justice.

[1] Appellant contends that the intentional destruction of the automobile by the son of the named insured in the policy was not a "direct and accidental loss" as required by the terms of the policy.

This Court defined the word "accident" in connection with a suit seeking recovery under an accidental death policy which provided for "direct and accidental loss" in the case of *Clay v. Insurance Co.*, 174 N.C. 642, 94 S.E. 289, as follows:

" . . . (I)n case of accident insurance, as expressed in the general terms of this policy, the word 'accident' should receive its ordinary and popular definition as an unusual and unexpected occurrence — one that takes place without the foresight or expectation of the person affected — and that in a given case the question is to be determined by reference to the facts as they may affect the holder of the policy, or rather the person insured. 'An event, which, under the circumstances, is unusual and unexpected by the person to whom it happens.' Bomvier, 1883, as cited in *Lovelace v. Travelers' Protective Association,* 126 Mo. 104, and the cases, hold further that the intentional killing of the insured by a third person does not of itself, and without more, withdraw the claim from the protection of the policy. . . . "

In *Fallins v. Insurance Co.*, 247 N.C. 72, 100 S.E. 2d 214, the court considered an accidental death policy, and stated:

"An injury is 'effected by accidental means' if in the line of proximate causation the act, event, or condition from the standpoint of the insured person is unintended, unexpected, unusual, or unknown. The unintended acts of the insured are deemed accidental. Injuries caused to the insured by the acts of another person, without the consent of the insured, are held due to accidental means unless the injurious acts are provoked and should have been expected by the insured. . . . "

These cases effectively point out that whatever is unexpected or unforeseen is determined from the standpoint of the named insured in the policy.

[2, 3] The use of the word "accidental" to limit the losses in automobile insurance policies is subject to more than one reasonable meaning. It is well settled that when such words become ambiguous as applied to the various causes of loss set forth in the policy, the ambiguity will be construed against the insurer.

"The words used in the policy having been selected by the insurance company, any ambiguity or uncertainty as to their

meaning must be resolved in favor of the policyholder or the beneficiary and against the company." *Trust Co. v. Insurance Co.*, 276 N.C. 348, 172 S.E. 2d 518.

[4]   We therefore conclude that an automobile insurance policy providing for payment for accidental loss or damage to the automobile includes loss caused by the intentional act of another when in the line of causation the act, from the standpoint of the policyholder or named insured, is unintended, unexpected, unusual, or unknown. Of course the insurance company may, by use of specific words, exclude losses covered by intentional acts of another.

Here the policy contained no specific provision excluding recovery for loss caused by the intentional act of another. Nor does the record show that the named insured had knowledge of, or complicity of any kind in, the intentional burning of the insured automobile.

Defendant argues that the tortious destruction of the automobile by Bobby Pleasant should be imputed to his father, the named insured, so as to preclude recovery.

In support of this argument defendant cites *Sparrow v. Casualty Co.*, 243 N.C. 60, 89 S.E. 2d 800, which holds that an employer could not recover on an insurance policy for the loss of an automobile which was tortiously converted to his use by an employee. Defendant also cites cases from other jurisdictions, including *Bellman v. Ins. Co.*, 178 Wis. 349, 189 N.W. 1028, where the Wisconsin Court denied recovery by an innocent partner on an insurance policy when the property covered by the policy was wilfully burned by his co-partner. These cases are distinguishable from instant case since all of the cases cited by defendant are based on relationships which allow tortious conduct to be imputed. This Court does not place tort liability on a parent simply because of the parent-child relationship.

The North Carolina rule in this respect is stated in the case of *Smith v. Simpson*, 260 N.C. 601, 133 S.E. 2d 474, as follows:

" 'The mere fact of the relationship does not render a parent liable for the torts of his child. Liability of the parent must be predicated upon evidence that the child was in some way acting in a representative capacity such as would make the master responsible for the servant's tort,

or on the ground that the parent procured, commanded, advised, instigated or encouraged the commission of the tort by his child, or that the parent was independently negligent as in permitting the child to have access to some dangerous instrumentality.'" (Quoting from 3 Strong: N. C. Index, Parent and Child, § 7.)

The Virginia case of *Aetna Ins. Co. v. Carpenter,* 170 Va. 312, 196 S.E. 641, is a case factually similar to instant case. There a mother sued to collect under a fire insurance policy which covered her home from loss by fire. The fire started in the mother's absence and while her minor children were in the house. The insurance company sought to escape liability under the policy on the ground that the policyholder's children intentionally set fire to the house. There the Court stated:

"It seems to be the general rule that no fraudulent acts of an agent or of a third person, even though the incendiary be a relative, will void the policy unless the insured is implicated in the fraud. . . .

"It has been held that mere agency, in the absence of proof of privity, consent, or ratification on the part of the insured will not defeat recovery in the event that an agent is shown to have burned the property. . . . "

In 44 Am. Jur., 2d, Insurance, § 1365, at p. 210, it is stated:

"The fact that the property was intentionally burned by the insured's relative or agent does not defeat a recovery where the insured was not implicated in the act."

Accord: *Firemen's Mut. Ins. Co. v. Aponaug Mfg. Co.* (CA5 Miss.), 149 F. 2d 359; *Mechanics' Ins. Co. v. Inter-Southern L. Ins. Co.,* 184 Ark. 625, 43 S.W. 2d 81; *Henderson v. Western M. & F. Ins. Co.,* (La.) 10 Rob 164 (agent); *Williams v. Fire Asso. of Philadelphia* (La. App.) 193 So. 202; *Aetna Ins. Co. v. Carpenter,* 170 Va. 312, 196 S.E. 641; *Hawkins v. Glens Falls Ins. Co.,* 115 W. Va. 618; 177 S.E. 442.

The insured (policyholder) under a contract of insurance is the person who will receive a certain sum upon the happening of a specified contingency or event. 43 Am. Jur. 2d, Insurance, § 251. Such insured in the policy before us was the named insured, E. L. Pleasant.

Defendant avers that the parties to the policy never intended to provide for a loss resulting from an intentional burning by an insured. In support of this contention defendant relies on the definition of "insured" contained in the policy, viz:

> "Insured" means (a) with respect to the owned automobile (1) the named insured and (2) any person or organization, other than a person or organization engaged in the automobile business or as a carrier or other bailee for hire, maintaining, using or having custody of said automobile with the permission of the named insured.

It is obvious that the above quoted definition described persons who may operate the insured vehicle under the policy coverage. It does not purport to create the obligations or provide the benefits which are vested in the named insured or policyholder. Thus, we agree that an intentional destruction of the automobile by the named insured would preclude recovery by him, but that the intentional act of his son would not defeat recovery where the named insured is in no way implicated in the act.

[5] The Court of Appeals affirmed the trial court on the theory that in this jurisdiction public policy precludes a person from profiting by his own wrong. We agree that this is the law. *In re Estate of Ives,* 248 N.C. 176, 102 S.E. 2d 807. However, we do not agree with the Court of Appeals' application of this principle of law to the facts of this case. The Court of Appeals in its majority opinion stated that Bobby Pleasant "would be a substantial beneficiary of the attempted recovery." The record indicates that E. L. Pleasant died intestate. Ordinarily Bobby Pleasant would be one of his heirs; however, it is well settled in this jurisdiction that only an administrator may collect debts due his decedent, *Spivey v. Godfrey,* 258 N.C. 676, 129 S.E. 2d 253, and that a cause of action which accrues during the lifetime of a decedent survives to his executor or administrator. *Mast v. Sapp,* 140 N.C. 533, 53 S.E. 350. The personal representative must first pay the debts of the decedent, and this record does not show that the assets of the estate will exceed its liabilities. There is no legally enforceable right to the proceeds of the insurance policy vested in Bobby Pleasant. Thus the right of action which vested in the administrator of E. L. Pleasant cannot be defeated because of the intentional destruction of the automobile by Bobby Pleasant.

The question of whether Bobby Pleasant, as a distributee of his father's estate, may share in the proceeds if there be a recovery in this action is not before us.

The decision of the Court of Appeals is

Reversed.