[No. 50228–5.   En Banc.   October 4, 1984.]

FEDERATED AMERICAN INSURANCE COMPANY, *Respondent,*
v. CLYDE STRONG, *Petitioner.*

*Ries & Kenison,* by *Harry E. Ries,* for petitioner.

*Murray, Dunham & Murray,* by *Matt Murray,* for respondent.

BRACHTENBACH, J.—This is a declaratory judgment action, brought to determine whether an insurance policy purchased by Clyde Strong provides him with liability and collision coverage with respect to certain automobile collisions. The trial court and Court of Appeals held that there was no coverage. We reverse.

In December 1977, Clyde Strong's wife Lisa, while driving his Oldsmobile Toronado automobile, intentionally collided with two other automobiles. Lisa first drove the Toronado into an automobile driven by Constance A. Lindell; then, she drove the Toronado around the Lindell automobile and rammed a second automobile driven by Karl L. Reuble. Putting the Toronado into reverse, Lisa backed into the Lindell automobile, and then drove around it and hit the Reuble automobile a second time. Lisa finally turned the Toronado around and chased Ms. Lindell, who

had left her automobile and was attempting to retreat up an embankment.

At the time of the collisions, Clyde and Lisa Strong had been separated for several months; Lisa was using the Toronado with Clyde's permission.

The Toronado was insured by Federated American Insurance Company (FAIC). The policy provided both liability and collision coverage. Approximately 16 months after the collision, FAIC filed a declaratory judgment action, seeking a declaration of no coverage under its policy for any damages or injuries arising out of the December 1977 collisions. Clyde Strong denied FAIC's allegation that its insurance policy provided no coverage. He also counter-claimed, alleging that FAIC had breached its insurance contract by failing to provide him with a defense to an action filed against him by Karl Reuble, and that FAIC had violated the Consumer Protection Act. In an amendment to his counterclaim, Clyde sought reimbursement from FAIC for $3,500 physical damages to the Toronado.

The trial court held that the FAIC insurance policy did not provide coverage to either Clyde or Lisa Strong for any damages or injuries arising out of the collisions of December 1977. The Court of Appeals, Division Three, affirmed. *Federated Am. Ins. Co. v. Strong*, 36 Wn. App. 256, 673 P.2d 873 (1983). We accepted discretionary review.

I

We must first decide whether Clyde Strong is entitled to liability coverage under the FAIC policy. Under the terms of the policy's liability section, FAIC agreed:

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by any person;
B. injury to or destruction of property, including loss of use thereof, hereinafter called "property damage";
arising out of the ownership, maintenance or use of the

owned automobile or any non–owned automobile, and Company shall defend any suit alleging such damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but Company may make such investigation and settlement of any claim or suit as it deems expedient.

The policy, however, contains the following exclusion of liability coverage:

Exclusions: This policy does not apply under the Liability Section:

. . .
  (b) to bodily injury or property damage caused intentionally by or at the direction of the insured; . . .

The following finding of fact was made by the trial court:

That on or about December 12, 1977 the defendant Lisa M. Strong was driving said 1975 Oldsmobile Toronado automobile when *she intentionally and at her direction* caused said automobile to collide on two occasions with the automobile owned and driven by Karl L. Rueble [*sic*] and an automobile owned and driven by Constance A. Lindell, said collisions occurring on Interstate Highway 90 approximately 5.3 miles east of Moses Lake, Washington.

(Italics ours.) Clyde Strong did not challenge this finding of fact on appeal. Therefore, the facts so found are the established facts in this case. *Painting & Decorating Contractors of Am., Inc. v. Ellensburg Sch. Dist.*, 96 Wn.2d 806, 814, 638 P.2d 1220 (1982). Since Lisa Strong intentionally collided with the two vehicles, she is excluded from liability coverage under the FAIC policy.

However, Clyde Strong argues that the policy exclusion does not apply to him. He relies on *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81,* 20 Wn. App. 261, 579 P.2d 1015 (1978). In *Unigard,* an 11–year–old boy broke into a school building and set fire to the contents of a trash can. The fire spread, causing extensive damage to the building. The school district sued the boy and his parents, alleging that they had negligently failed to supervise and control him. *Unigard,* at 262–63. The family's insurance company

sought a declaratory judgment that it was not obligated to defend or indemnify the parents or the boy, relying on a policy exclusion which provided:

"This policy does not apply . . . to bodily injury or property damage which is either expected or intended from the standpoint of the insured."

(Italics omitted.) *Unigard,* at 262. The *Unigard* court held that, as to the boy, the fire damage was the expected result of an intentional act, so that the insurance company had no duty to defend or indemnify him. Nevertheless, the *Unigard* court held that the insurance company had a duty to defend and indemnify the parents, reasoning as follows:

The policy extends defense and indemnification to "the Insured," and it excludes from coverage intentional acts resulting in injury or damage "expected or intended from the standpoint of the insured." The parties concede the boy and the Hensleys are all "insureds" under the policy. In such instances, where coverage and exclusion is defined in terms of "the insured," the courts have uniformly considered the contract between the insurer and several insureds to be separable, rather than joint, *i.e.,* there are separate contracts with each of the insureds. The result is that an excluded act of one insured does not bar coverage for additional insureds who have not engaged in the excluded conduct.

(Footnote omitted.) *Unigard,* at 265–66.

Applying the *Unigard* reasoning to the present case, we hold that the plain terms of the FAIC insurance policy entitle Clyde Strong to liability coverage. Liability coverage is provided to "the insured." Coverage is excluded for injury or damage caused intentionally by "the insured." Since coverage and exclusion have been defined in terms of "the insured," there are separate contracts between FAIC and its insureds, and the excluded act of Lisa Strong does not bar coverage for Clyde Strong.

Our conclusion that Clyde Strong has liability coverage is reinforced by a severability clause contained in the policy:

*The insurance afforded under the Liability Section applies separately to each insured against whom claim*

*is made or suit is brought,* but the inclusion herein of more than one insured shall not operate to increase the limits of Company's liability.

(Italics ours.)

██ The terms of an insurance policy must be understood in their plain, ordinary and popular sense. Clear and unambiguous language is not to be modified under the guise of construing the policy. *Farmers Ins. Co. v. Miller,* 87 Wn.2d 70, 73, 549 P.2d 9 (1976). The severability clause included in the FAIC policy clearly and unambiguously provides that liability coverage applies *separately* to each insured. It follows that FAIC cannot deny coverage to one separate insured, Clyde Strong, based upon the intentional acts of another insured, Lisa Strong.

Despite the plain terms of its policy, FAIC argues it need not provide Clyde Strong with liability coverage since provision of such coverage would violate public policy. FAIC's argument is based on *U.S.F. & G. Ins. Co. v. Brannan,* 22 Wn. App. 341, 589 P.2d 817 (1979). *Brannan* involved a husband who shot his two business partners. His insurer brought a declaratory judgment action seeking an adjudication that there was no coverage or duty to defend under its homeowner's policy. The *Brannan* court agreed on two grounds. First, because the jury had found that the shooting arose out of business pursuits, the court held that an exclusion for injury or damage "arising out of business pursuits of any Insured" applied. Second, concluding that the husband's intentional torts created community liability, the court held that public policy prevented the provision of insurance coverage to the community. Starting from the premise that public policy prevents an insured from benefiting from his wrongful acts, the *Brannan* court reasoned as follows:

> To permit the other spouse, in this case the wife, to get the benefit of the insurance would mean that the community would benefit from the wrongful act of one of its members. This would be contrary to public policy. *Unigard* does not support this result even though there are

separate insureds. The community must accept the fact that there would be no insurance if one of its insureds should commit an act which is excluded and which binds the community. *Otherwise, this would result in the anomalous situation of John Brannan's property indirectly having insurance coverage when, by his acts, he excluded himself from coverage.*

(Italics ours.) *Brannan,* at 349.

In other words, where there is community liability for the acts of the tortfeasor spouse, the *Brannan* court concluded that provision of liability coverage to the community would violate public policy by indirectly benefiting the tortfeasor spouse. However, *Brannan* is distinguishable, since the intentional torts of Lisa Strong would *not* create community liability.[1] Community liability attaches where a tort is done in the management of community business, or for the benefit of the community. *deElche v. Jacobsen,* 95 Wn.2d 237, 245, 622 P.2d 835 (1980). Lisa Strong's intentional collisions were not done for the benefit of the community, nor were the collisions done in the management of community business. Therefore, no community liability for Lisa's torts could be imposed.

Nevertheless, the Court of Appeals, Division Three, relying on *Brannan,* held that provision of liability coverage to Clyde Strong would violate public policy, reasoning:

If it be concluded that there is no community liability in this case, no personal liability on husband Strong's part, and because of the severability clause, he is still covered by the insurance contract, why would he not be entitled to have the insurance company defend him in the suit brought against him arising out of the collisions? The answer is that such a result would be a benefit to the Strong marital community.

*Federated Am. Ins. Co. v. Strong,* 36 Wn. App. 256, 261, 673 P.2d 873 (1983).

---

[1]Because *Brannan* is inapplicable here, we do not decide whether we agree with its reasoning. Whether public policy requires the complete denial of liability coverage to an innocent person whose spouse's deliberate tort created community liability is an issue which we expressly leave for another day.

The Court of Appeals apparently reasoned that, even if the community were not liable for Lisa's torts, the defense promised under the liability section could not be provided to the community without indirectly benefiting Lisa and thereby violating public policy. This reasoning is faulty. First, a defense of the community cannot benefit Lisa from the standpoint of protecting her property interests. Even if the community is absolved of liability, under *deElche v. Jacobsen, supra,* the victims of her separate torts will be able to reach her half of the community property. *deElche,* at 246. Therefore, the purpose of defending the community can only be to protect the community interest of Clyde, the innocent spouse. Second, although FAIC's defense of the community might benefit Lisa to the extent that community property need not be spent on legal services, this court has permitted incidental benefit to a tortfeasor spouse where necessary to protect the innocent spouse.

In *Freehe v. Freehe,* 81 Wn.2d 183, 191, 500 P.2d 771 (1972), one argument raised against abolition of interspousal tort immunity was that, since any tort recovery would be community property, permitting one spouse to sue the other would result in the tortfeasor spouse benefiting from his or her wrong. The *Freehe* court rejected this argument, noting that it was within its power to fashion a new, appropriate remedy for interspousal torts. One element of the recovery permitted was out–of–pocket community expenses:

> The fact that the tort–feasor spouse is thereby spared his or her community share of these expenses is, we think, outweighed by the facts that these damages are strictly compensatory in nature, inuring directly to the benefit of the injured spouse, and that any reduction in the damages recoverable would most directly and harmfully affect the injured spouse.

*Freehe,* at 192.

Similarly, the fact that Lisa may be spared her share of community legal expenses is outweighed by the facts that FAIC's defense of the community inures directly to the

benefit of Clyde, and any refusal to defend the community most directly and harmfully affects Clyde.

FAIC's next argument is that liability coverage must be denied because, under *deElche*, the victims of Lisa Strong's separate torts may reach her half of the Strongs' community property. That may be correct, a point on which we express no opinion, but even if the victims can reach her share of community property for her separate tort, Clyde is still entitled to a defense to protect his interests. What other rights and liabilities Clyde and Lisa may have between themselves is not before us.

In sum, Clyde Strong is entitled to liability coverage under the terms of the FAIC policy, and there is no public policy which precludes enforcement of FAIC's obligation to Clyde. Accordingly, we reverse the trial court's grant of declaratory judgment to FAIC, as well as the Court of Appeals affirmance thereof, and remand to the trial court for determination of Clyde's breach of contract claim against FAIC.

## II

We next consider whether Clyde Strong is entitled to collision coverage under the FAIC policy. The policy provides that FAIC will pay for "loss" to the Toronado caused by collision. "Loss" is defined as follows:

"loss" means direct and accidental loss of or damage to (a) the automobile, including its equipment, or (b) other insured property;

In his amended counterclaim against FAIC, Clyde Strong sought recovery of damages of $3,500 to the Toronado resulting from Lisa's intentional collisions. FAIC's argument against such recovery is twofold. First, it contends that the damage to the Toronado was not "direct and accidental" because it was the result of Lisa Strong's deliberate, intentional act. Second, it asserts that, because the Toronado is a community asset, permitting recovery would improperly benefit Lisa Strong. The Court of Appeals, relying on *Brannan*, agreed with FAIC that any recovery would benefit Lisa and violate public policy. It affirmed the

trial court's holding that Clyde was not entitled to collision coverage. *Strong,* 36 Wn. App. at 262–63.

■ Clyde Strong relies on *Pleasant v. Motors Ins. Co.,* 280 N.C. 100, 185 S.E.2d 164 (1971). In *Pleasant,* a son intentionally set fire to his father's car, which was insured against "direct and accidental loss." The *Pleasant* court held that the father was entitled to insurance coverage:

> We therefore conclude that an automobile insurance policy providing for payment for accidental loss or damage to the automobile includes loss caused by the intentional act of another when in the line of causation the act, *from the standpoint of the policyholder or named insured,* is unintended, unexpected, unusual, or unknown.

(Italics ours.) *Pleasant,* at 103.

We agree with Clyde Strong. A loss is "accidental" when it happens without design, intent, or obvious motivation. *Webster's Third New International Dictionary* 11 (1971). As used in FAIC's policy, the term "accidental" is ambiguous, since the policy does not specify from whose standpoint the presence or lack of intent is to be assessed. It is fundamental that ambiguities in the policy must be construed against the insurer and in favor of the insured. *Witherspoon v. St. Paul Fire & Marine Ins. Co.,* 86 Wn.2d 641, 650, 548 P.2d 302 (1976). Therefore, in accord with *Pleasant,* we hold that "accidental" loss is loss which, *from the standpoint of the claimant,* happened without design, intent, or obvious motivation. Since Clyde did not intend the damage to the Toronado, the damage to the Toronado was "direct and accidental" as to Clyde, and the policy affords him collision coverage.

■ The question remains, however, whether permitting Clyde Strong to recover the full $3,500 damages would violate public policy by improperly benefiting Lisa Strong. The possibility of improper benefit to Lisa exists only if the Toronado is a community asset. We hold that, to the extent the Toronado is community property, FAIC must reimburse Clyde for only half the damages to the Toronado, as

his separate property. The character of the Toronado, which has not yet been satisfactorily determined,[2] will be decided upon remand. We reverse the holdings of the trial court and Court of Appeals that Clyde Strong is not entitled to collision coverage.

### III

The final issue is whether FAIC violated the Consumer Protection Act (CPA), RCW 19.86, by denying coverage to Clyde Strong.

Clyde Strong alleges that FAIC, by refusing coverage and failing to promptly explain why, engaged in unfair or deceptive conduct as defined in WAC 284–30–330(6) and WAC 284–30–330(13). He seeks treble damages and attorneys' fees under RCW 19.86.090, claiming that the conduct defined in WAC 284–30–330 is a per se violation of the CPA. The trial court held that FAIC had not violated the CPA. The Court of Appeals affirmed. *Strong,* 36 Wn. App. at 263.

A per se violation of the CPA which is privately actionable is established by conduct which is both unlawful and against public policy as declared by the Legislature or the judiciary. *Sato v. Century 21 Ocean Shores Real Estate,* 101 Wn.2d 599, 601, 681 P.2d 242 (1984). RCW 48.30.010(1) prohibits any person in the business of insurance to engage in unfair or deceptive acts or practices in the conduct of such business, as such acts or practices are defined pursuant to RCW 48.30.010(2). Moreover, the Legislature has declared a public interest in the insurance business. *See Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978). Thus, conduct which is defined pursuant to RCW 48.30.010(2) as an unfair or deceptive act or practice is unlawful and against public policy.

RCW 48.30.010(2) authorizes the insurance commissioner

---

[2]Although the Court of Appeals stated in its opinion that the Toronado was community property, the record does not contain any facts on that issue. The trial court did not enter any findings or conclusions of law as to the community or separate character of the Toronado. The record contains nothing on this question.

to promulgate regulations defining unfair or deceptive acts or practices. Pursuant to RCW 48.30.010(2), the Insurance Commissioner promulgated WAC 284–30–330, which provides in relevant part:

The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:

. . .

(6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

. . .

(13) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

WAC 284–30–330, promulgated pursuant to RCW 48.30.010(2), defines conduct which is unfair or deceptive. However, WAC 284–30–300 states that the purpose of the regulation is to define certain minimum standards which, if violated with such frequency as to indicate a general business practice, will be deemed to constitute unfair claims settlement practices. In light of WAC 284–30–300, it is unclear whether a *single* instance of the conduct defined in WAC 284–30–330 amounts to a violation of RCW 48.30-.010(1), and thereby a per se violation of the CPA.

We cannot now resolve this issue. The trial court's conclusion that FAIC did not violate the CPA was based on its holding that Clyde was not entitled to liability or collision coverage. Given our contrary holding, the trial court's conclusion that FAIC did not violate the CPA may be erroneous. We remand to the trial court for determination whether FAIC engaged in conduct defined in WAC 284–30–330 and, if so, whether this conduct was a per se violation of the CPA.

Reversed and remanded.

WILLIAMS, C.J., DORE, J., and CUNNINGHAM and HAMILTON, JJ. Pro Tem., concur.

PEARSON, J. (concurring in part, dissenting in part)—I concur with parts I and II of the majority opinion. However, I am unable to fully concur with part III of that opinion wherein the majority remands to the trial court for a determination of whether Federated American Insurance Company (FAIC) has violated the Consumer Protection Act (RCW 19.86) by engaging in conduct defined as "unfair or deceptive" by WAC 284-30-330, which provides in relevant part:

> The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:
>
> . . .
>
> (6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.
>
> . . .
>
> (13) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

I think it inappropriate to remand this case for a determination of whether FAIC's denial of coverage violated WAC 284-30-330(6). In order to find that FAIC acted in bad faith, the trial court would have to find that FAIC's denial of benefits was "frivolous and unfounded". *Miller v. Indiana Ins. Cos.*, 31 Wn. App. 475, 479, 642 P.2d 769 (1982). Such a finding would be unsupportable in this case. FAIC's denial of coverage was grounded on genuine public policy concerns. The reasonableness of FAIC's arguments is attested to by the fact that the trial court and Court of Appeals both held in favor of FAIC. I am sure the majority does not intend to characterize the decisions of the learned judges below as frivolous or unfounded. Yet, it seems to me that by remanding this case for a determination of whether FAIC acted in good faith, the majority has done just that.

FAIC's denial of coverage, although it was incorrect, was reasonable. An insurer who reasonably disputes a claim does not act in bad faith as a matter of law. *Miller,* at 479.

Thus, I would limit the scope of the trial court's inquiry on remand to a determination of whether FAIC engaged in the conduct described in WAC 284–30–330(13). The issue of good faith should not be considered.

UTTER, DOLLIVER, and DIMMICK, JJ., concur with PEARSON, J.