UNITED STATES FIDELITY AND GUARANTY CO., Plaintiff,

v.

ASSOCIATED SLEEP INDUSTRIES, INC., Travelers Indemnity Co., Deborah A. Spat, as Executrix of the Estate of Evelyn Truce, Joseph Almeida, as Administrator of the Estate of Judith Almeida, Adam Almeida, Mark Almeida, Christie Lynn Almeida, James DeSanto, Jr., Eileen DeSanto, Lily Transportation Corporation, and Eclipse Products of New England, Inc., f/k/a Associated Sleep Industries, Inc., Defendants.

Deborah A. SPAT, Counter–Claimant,

v.

UNITED STATES FIDELITY AND GUARANTY CO., Counter–Defendant.

Civil Action No. 95–11635–REK.

United States District Court, D. Massachusetts.

April 17, 1998.

---

Donald W. Goodrich, Donovan & O'Connor, Adams, MA, for U.S. Fidelity and Guar. Co.

John C. Gates, Callahan, Curtiss, Carey & Gates, Greenfield, MA, for Deborah A. Spat.

Ronald E. Harding, Weston, Patrick, Willard & Redding, Boston, MA, for Joseph Almeida, Adam Almeida, Mark Almeida and Christie Lynn Almeida.

John B. Stewart, Springfield, MA, for James DeSanto.

Maria E. DeLuzio, Thomas E. Peisch, Conn, Kavanaugh, Rosenthal, Peisch & Ford, Boston, MA, for Lily Transp. Corp.

## Opinion

KEETON, District Judge.

The dispute remaining to be resolved in this case is primarily, if not exclusively, over the appropriate interpretation of several motor vehicle liability insurance policies issued by different insurers, some to the same and some to different named policyholders.

If no genuine dispute exists about any material historical fact or any material evaluative conclusion that applicable law assigns to a finder of fact for decision, the outcome must be decided as a matter of law by this court initially, subject to reversal on appeal to the Court of Appeals for the First Circuit, with the possibility that either this or the Circuit Court might certify to a state court of last resort potentially decisive state-law issues.

Each party contended, on its submissions filed before the hearing on Friday, April 10, 1998, that it was either disinterested in the outcome or else entitled to the judgment it sought, as a matter of law, under an appropriate determination of the meaning of all relevant policy "coverage" and "exclusion" provisions, after the court would take into account all settlements and stipulations that are in the two separate summary judgment records before the court.

It does not necessarily follow, however, that this court had only a binary choice to make in deciding the motions for summary judgment. Each party was seeking declaratory relief, rather than only an award of money or a take-nothing judgment against others. For reasons explained at the hearing on April 10, 1998 and in this Opinion, I concluded at that hearing that no party moving for

summary judgment has met its burden of showing a legal ground of relief founded on settled law (rather than reasonably debatable contentions on yet undecided legal issues) and a showing (even a "prima facie" showing, which, under First Circuit precedent, may shift the burden to the non-moving party) that each of the factual predicates of that legal ground is not genuinely disputable.

For the reasons expressed at the hearing of April 10 and explained more fully in this Opinion, I denied at that hearing plaintiff's and defendants' motions for summary judgment.

## I. Procedural Developments Preceding the Hearing on Friday, April 10, 1998

In its Second Amended Complaint for Declaratory Relief (attached to Docket No. 19, the motion for leave to amend that the court allowed by order on the margin of the motion, January 12, 1996), United States Fidelity and Guaranty Company (USF & G) as plaintiff, without designation of counts or legal grounds other than by a caption "JURISDICTION" appearing between paragraph 11 and paragraph 13, and with a caption "FACTS" appearing between paragraph 13 and paragraph 14, makes allegations in 61 numbered paragraphs in eight pages, followed by a prayer for relief in 32 numbered paragraphs appearing on pages 8–14, with an introductory unnumbered statement that:

USF & G demands that this court adjudge and declare the right, duty, status and any other legal relations that USF & G may have with [1] Lily, [2] Associated, and [3] James DeSanto, Jr., or any of them, in connection with the Accident; and more particularly, demands that the court adjudge and declare that: [then following are the 32 numbered paragraphs].

All parties now remaining in the civil action filed answers, and some filed counterclaims. In relevant part, taking into account the Stipulation of Dismissal described immediately below, Travelers has asserted a counterclaim ·asking this court to declare that:

[U]nder the terms and conditions of insurance policies issued by USF & G, USF & G provided coverage for the Almeida Claims, and as a result, Travelers is enti-

tled to be reimbursed by contribution from USF & G for some or all of the amount it paid to settle those claims.

Answer of Travelers Indemnity Company to Second Amended Complaint and Counterclaim (Docket No. 25, filed December 21, 1995), at 10. Associated's counterclaim has requested that same relief, and that this court in addition declare that:

[U]nder the terms and conditions of insurance policies issued by USF & G, Associated is an insured entitled to coverage from USF & G for the claims brought by Joseph Almeida, as administrator of the estate of Judith Almeida and as next friend and guardian of Joseph Almeida, Jr., Rachel Almeida, Mark Almeida, Christie Almeida, John Almeida and Angela Almeida, Deborah A. Spat, as executrix of the estate of Evelyn Truce, James R. DeSanto, Eileen DeSanto, Adam Almeida and Mary Almeida.

Answer of Associated Sleep Industries, Inc. to Second Amended Complaint and Counterclaim (Docket No. 24, filed December 21, 1995), at 10–11 (quoting only requested declarations that appear to survive Stipulation of Dismissal described below).

USF & G filed a motion for summary judgment on its claims, and Travelers and Associated Sleep filed motions for summary judgment on their counterclaims.

On March 2, 1998, the Clerk received and filed (Docket No. 64) "THE PARTIES' STIPULATION OF DISMISSAL WITH PREJUDICE," declaring as follows:

1. All claims with respect to any rights, duties, status or other legal relations that they may have in connection with United States Fidelity and Guaranty ("USF & G") policy nos. XM2 878298, 1AB 139617160 00, 1MP 126641856 00 and AGM 138100700 with respect to the suit (civil action no. 93–095) filed in the Franklin (MA) Superior Court by James DeSanto, Jr. and Eileen DeSanto be dismissed without prejudice.

2. All claims with respect to any rights, duties, status or other legal relations that they may have in connection with USF & G policy nos. XM2 878298, 1AB 139617160 and 1MP 126641856 00 with respect to the

suit (civil action no. 93–148) filed in the Franklin (MA) Superior Court by Deborah A. Spat be dismissed without prejudice.

3. All claims with respect to any rights, duties, status, or other legal relations that they may have in connection with USF & G policy nos. XM2 878298, 1AB 139617160 00 and 1MP 126641856 00 with respect to the claims brought by Joseph Almeida, Adam Almeida, Mark Almeida and Christie Lynn Almeida on account of a motor vehicle in Shelburne, Massachusetts, on March 31, 1993, be dismissed with prejudice.

Stipulation of Dismissal at 1–2.

## II. Other Elements of the Procedural Background

Pending for decision before the hearing on Friday, April 10, 1998 were the following motions for summary judgment:

(1) Defendant, Plaintiff–in–Counterclaim Travelers Indemnity Company's Motion for Summary Judgment (Docket No. 54, filed March 2, 1998). Other defendants have joined Travelers in their motion by relying on Travelers' submissions in support through the following filings: (a) Defendant, Eclipse Sleep Products of New England, Inc. d/b/a Associated Sleep Industries' Motion for Summary Judgment (Docket No. 60, filed March 2, 1998), and (b) Lily Transportation Corporation's Response to Cross Motions for Summary Judgment (Docket No. 67, filed March 4, 1998). Plaintiffs have filed opposition (Docket No. 80, filed March 30, 1998).

(2) Plaintiff United States Fidelity and Guaranty Company's Motion for Summary Judgment (Docket No. 61, filed March 2, 1998). Defendant Travelers Indemnity has filed opposition (Docket No. 71, filed March 16, 1998). Defendant Lily Transportation has joined that opposition (Docket No. 83, filed April 2, 1998). Defendant Eclipse Sleep Products has also filed opposition (Docket No. 77, filed April 10, 1998).

## III. Stipulated Facts and the Identified Remaining Dispute

The parties have filed a Stipulation of Agreed Facts (Docket No. 44, filed May 12, 1997). The parties have also filed a Stipulation of Issues (Docket No. 45, filed May 12, 1998). Furthermore, the parties entered into a Stipulation of Dismissal that, as quoted above, significantly limited the scope of the claims and counterclaims asserted in the pleadings.

In light of the parties' previous filings, the only remaining dispute in this case concerns the duty of plaintiff USF & G to contribute to a settlement made between defendant Travelers and certain claimants, and to the costs associated with that settlement.

The Stipulation of Agreed Facts establishes the following facts as undisputed:

(1) On March 31, 1993, a tractor-trailer driven by Mr. James DeSanto, an employee of defendant Associated, collided with two automobiles.

(2) Defendant Associated had possession of the tractor-trailer pursuant to a Motor Vehicle Lease Agreement dated May 28, 1991 between defendants Associated and Lily Transportation. Stipulation of Agreed Facts at Exh. 1.

(3) Defendant Lily Transportation held title to the tractor-trailer at the time of the accident.

(4) Each of the Almeidas, named in this action as defendants, was a passenger (or legal representative of a minor passenger or successor claimant after death of a passenger) in one of the automobiles and either the passenger died as a result of the accident, or was injured and is still alive. The Almeidas (or representatives) presented claims against defendant Lily Transportation, defendant Associated, and the driver of the tractor-trailer. Defendant Travelers settled those claims for $2.45 million.

(5) Evelyn Truce, for whom defendant Deborah Spat is an executrix, was a passenger in the other automobile involved in the collision. Ms. Truce died in the accident. Defendant Travelers settled a claim filed on her behalf for $375,000.

## IV. The Relevant Policies

### A. Summary

In summary, the relevant insurance policies were:

(1) Travelers Business Auto Coverage Policy (No. A4–BAP 153J394–7–93) (the BAP Policy). Docket No. 59, Exh. 1.

Policyholder: Associated.

Coverage Limits: $1 million for each person and $1 million for each accident, applying to occurrences during the period from 1/1/93 to 1/1/94.

Payments Already Made:è$1 million applied toward the $2.45 million settlement with the Almeidas.

(2) Travelers Catastrophe Umbrella Policy (the TCU Policy). Docket No. 59, Exh. 2.

Policyholder: Associated.

Coverage Limits: $2 million per occurrence for the period from 1/1/93 to 1/1/94.

Payments Already Made: (a) $1.45 million of the $2.45 million paid to the Almeidas with the coverage under the TCU Policy, and (b) $375,000 paid to settle Truce's claim.

(3) USF & G Massachusetts Motor Vehicle Garage Policy No. AGM 13810070 (the USF & G AGM Policy). Docket No. 57, Exh. 9.

Policyholder: Lily Truck Leasing Corp.

Coverage Limits: $1 million for each accident.

Payments Already Made: None.

The parties have stipulated that whether plaintiff USF & G owes a duty to contribute to defendant Travelers depends on the effectiveness of an exclusion from coverage contained in the otherwise applicable USF & G AGM Policy. Stipulation of Issues at 4.

### B. USF & G's Massachusetts Motor Vehicle Garage Policy

Part II of the USF & G AGM Policy covers "BODILY INJURY LIABILITY–OTHER THAN STATUTORY–PROPERTY DAMAGE LIABILITY AND PHYSICAL DAMAGE INSURING AGREEMENTS." Relevant Coverage B in that part provides that USF & G:

[w]ill pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage to which Part II applies, caused by accident and arising out of the hazards described below;

. . . .

Motor Vehicle Hazard

(a) The ownership, maintenance or use of any motor vehicle for the purpose of garage operations, (b) the occasional use for other business purposes and the use for non-business purposes of any motor vehicle owned by or in charge of the Named Insured and used principally in garage operations, and (c) the ownership, maintenance or use of any motor vehicle owned by the Named Insured while furnished for the use of any person.

Docket No. 57, Exh. 9.

Under the terms of this policy as amended and endorsed, and by operation of law, the coverage described immediately above extends to various additional insureds including, but not limited to, those listed in Endorsement MM 9950 (Ed. 05–88) to the policy. Docket No. 57, Exh. 9.

### *ADDITIONAL INSURED*

Under the LIABILITY INSURANCE Part of *your* policy, "WHO IS INSURED" is changed to include the person or organization named in this endorsement, but only for *bodily injury* or *property damage* resulting from the acts or omissions of:

1. *You,* while using a covered *auto.*

2. Any other person, while using a covered *auto* with *your* permission.

Additional Insured:

**LILY TRANSPORT LINES, INC.**

**JAS REALTY TRUSTS**

**J & L TRUCK LEASING CORP.**

**JOHN A. SIMOURIAN**

. . .

**LILY TRANSPORTATION CORP** . . . . .

*Id.* (emphasis in original).

A severability clause in the General Conditions Part of the policy states that:

Except with respect to coverages J, K, L, M, N, O and division 2 of coverage A, *the insurance applies separately to, each Insured against whom claim is made or suit*

*is brought,* but the inclusion herein of more than one Insured shall not operate to increase the limits of the Company's liability. *Id.* (emphasis added).

The parties dispute the applicability of the following exclusion from Part II coverage:

(4) to any motor vehicle . . . (b) while *rented* to others by the Named Insured unless to a salesman for use principally in the business of the Named Insured or unless rented to a customer of the named insured while such customer's vehicle is temporarily left with the Named Insured for service or repair . . . .

*Id.* (emphasis added).

### C. Travelers' BAP Policy

The relevant portion of the "Other Insurance" clause in the BAP Policy provides:

5. Other Insurance

(1) For any covered auto you own, this Coverage Form provides primary insurance. For any covered auto you don't own, the Insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered auto which is a trailer is connected to another vehicle, the Liability Coverage this Coverage Form Provides for this trailer is:

(1) Excess while it is connected to a motor vehicle you own.

(2) Primary when it is connected to a covered auto you own . . . .

c. Regardless of the provision of paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an insured contract . . .

Docket No. 59, Exh. 1, at 8.

### D. Travelers' TCU Policy

The "Other Insurance" clause in the TCU Policy provides:

f. Other Insurance

If other valid and collectible insurance is available to the insured for loss covered hereunder, this policy will be excess of such insurance. This condition does not apply to insurance purchased specifically to be either quota share with this policy or excess of this policy.

Docket No. 59, Exh. 2 at 11.

## V. Some Relevant Principles Governing Interpretation

An insurance policy should be H "interpreted as a whole" to give effect to the "main manifested design of the parties" as expressed "according to the words used" to capture "what an objectively reasonable insured . . . would expect to be covered." *Ayer v. Imperial Cas. & Indem. Co.,* 418 Mass. 71, 73, 634 N.E.2d 571 (1994).

Unless the words in an insurance policy viewed as a whole are ambiguous, a court should "not look beyond the four corners of the policy" but should read those words in their "usual and ordinary sense." *Somerset Savings Bank v. Chicago Title Ins. Co.,* 420 Mass. 422, 429, 649 N.E.2d 1123 (1995).

■ A court must interpret the terms of a contract in the usual and ordinary meaning unless the party seeking enforcement of a contractual provision makes a showing that "peculiar or technical meaning is more appropriate." *Woogmaster v. Liverpool & London & Globe Ins. Co.,* 312 Mass. 479, 481, 45 N.E.2d 394 (1942).

## VI. The Parties' Contentions

### A. An Introduction

Each side moves for summary judgment because each side contends that no genuine dispute of material fact remains and that each side is entitled to judgment as a matter of law. Defendants contend that the tractor-trailer involved in the accident could not, as a matter of law, have been "rented" for purposes of Part II, Exclusion 4(b) of the USF & G AGM Policy (Exclusion 4(b)). Plaintiff USF & G contends that the tractor-trailer, as a matter of law, was "rented," regardless of whatever formal name is given to the transaction through which Associated got possession of the tractor-trailer, because no material difference exists, under the terms of the policy or applicable law, between a "rented" vehicle and a "leased" vehicle.

## B. Defendants' Motions for Summary Judgment

Defendants base their motions for summary judgment on the contention that the tractor-trailer involved in the accident on March 31, 1993 was not "rented" from Lily Transportation, but "leased." Defendants argue that a distinction between "rented" and "leased" is material because a "leased" vehicle is significantly different from a "rented" vehicle under the terms of the USF & G AGM Policy. Defendants argue that, for that reason, Exclusion 4(b) does not exclude the occurrence of March 31, 1993 from coverage under the USF & G AGM Policy, and as to the coverage provided by the Travelers TCU Policy for the settlement amounts above the $1 million covered by Travelers' BAP policy, Travelers' TCU coverage is the only applicable coverage.

Defendants, in asking this court to interpret the meaning of the term "rented" in Exclusion 4(b), do not contend that the terms of the USF & G AGM Policy are ambiguous. Instead, defendants contend that the terms of that policy unambiguously exclude "leased" vehicles from coverage under Part II of that policy. Defendants contend that, as a matter of law, their favored interpretation of the exclusion is mandated by several rules of decision, including a rule against surplusage, a rule of exclusion by implication, a rule of holistic construction, a rule as to "fair meaning," and a rule of strict construction against the drafter.

Also, defendants contend that this court should consider various types of evidence beyond the provision of the USF & G AGM Policy in assessing the intended meaning of "rented" in Exclusion 4(b). Defendants argue that, after full consideration of all these matters, this court should rule that **"leased"** vehicles are not "rented" vehicles under the exclusion clause for the following reasons:

*First.* Defendants contend that under common, plain meaning a transaction in which a vehicle is "rented" is substantively different from one in which a vehicle is "leased." Defendant cites to a treatise, discussing automobile financing cases, that describes a "lease" in a way that supports that proposition. Defendant Travelers' Memorandum in Support at 6.

*Second.* Defendants contend that Lily Transportation, in conducting its business, offered vehicles to its customers under two different types of agreements, one type titled "Rental Agreement" and another type titled "Motor Vehicle Lease Agreement," and that the practice of using these different forms of contract in the conduct of Lily Transportation's business is material to a determination of the meaning of the term "rented" in the USF & G AGM Policy.

*Third.* Defendants contend that legislative usage distinguishes between the classification of a transaction as a "rental" and as a "lease," and that the distinction is material for interpretation of the terms in the USF & G AGM Policy.

*Fourth.* Defendants contend that the use in other parts of the USF & G AGM Policy of the term "lease" or a related word connected by the conjunction "or" to the term "rental," or a related word, within the same sentence, indicates that, for purposes of the USF & G AGM Policy, the term "rented," in the exclusion at issue, cannot include a "lease." In particular, defendants quote language from Endorsement MM 00 99 (Ed. 01 90). Defendant Traveler's Memorandum in Support at 8.

*Fifth.* Defendants contend that in custom and trade usage of the automobile industry the terms leased and "rented" have "separate, distinct, and totally different meanings," and this court should inform its interpretation of the terms in the USF & G AGM Policy by consideration of evidence of custom and trade usage. Defendants point to the affidavit of Ronald Geltman as evidence of custom and trade usage in the automobile industry.

In opposing defendants' motions for summary judgment, plaintiff, at first, apparently concedes that no genuine disputes of material fact remain in this case. Plaintiff's opposition (Docket No. 80) at 1. Plaintiff, however, then asks the court not to consider defendants' First, Second, and Fifth reasons above in interpreting, as a matter of law, the meaning of "rented" in the exclusion because con-

sideration of those reasons would require that this court inappropriately consider "extrinsic" evidence. In addition, plaintiff contends, as is more fully developed in plaintiff's motion for summary judgment, that the correct interpretation of "rented," under its common and ordinary meaning and in light of the use of the term in the policy and related forms, must include the type of transaction under which Associated had possession of the tractor-trailer to which Lily had title.

### C. Plaintiff's Motion for Summary Judgment

Plaintiff contends that, as a matter of law, this court should interpret the exclusion clause by considering only the usual and ordinary meaning of the words and by looking at the terms and structure of the policy overall. Plaintiff argues that defendants' contentions that the court should look elsewhere for meaning should be rejected, as a matter of law, because defendants concede that the clause is not ambiguous, and, under those circumstances, the court may not examine extrinsic evidence regarding the parties' intended meaning. For these reasons, plaintiff contends that this court should interpret the meaning of "rented" in the exclusion clause by considering only "intrinsic" evidence of the parties' intent. Plaintiff contends that "intrinsic" evidence as applied to the record in this case means only (1) dictionary definitions as indications of common and ordinary usage, (2) evidence of the type of policy involved, and (3) evidence of the usage of the terms "rented" and "leased" throughout the USF & G AGM Policy and its accompanying forms.

### VII. Summary Judgment for Either Side Is Inappropriate

■ This court, in deciding the motions for summary judgment, is not bound by the parties' contentions as to the scope of legal and factual inquiry that is required, as a matter of law, to determine the rights and responsibilities that arise from their relationships. If the parties' contentions, and the records that allegedly support those contentions, do not accurately represent, or omit material aspects of, the complete array of contractual and non-contractual relationships among the various parties, then the court must deny each side's request for summary judgment.

■ The total array of contractual and non-contractual relationships that are potentially relevant to the scope of coverage by USF & G under the AGM Policy *for the tort liability of the person who was driving* the tractor of the tractor-trailer combination includes not only the USF & G AGM Policy issued by USF & G and the endorsements to it but also the contracts among, and noncontractual relationships among USF & G, Associated, Lily, drivers other than Mr. DeSanto, and Mr. DeSanto, and probably other persons and entities.

The record before this court strongly suggests, but does not show beyond reasonable dispute of law or fact, that:

(1) The person driving the tractor was an additional insured of the USF & G policy on several independent grounds. One of these grounds is that Mr. DeSanto was driving with the manifested permission, express or implied, or both, of all of the entities having relevant relationship bearing on the operation of this tractor at the time it was in the accident on which all tort and insurance-coverage claims are based in this case.

(2) Several other entities were also additional insureds, on various grounds, but in most instances subject to more limits or conditions than those applying to the coverage for the driver referred to in paragraph (1) immediately above.

■ Either by reason of explicit policy provisions or by law in the absence of policy provisions to the contrary, under the majority view among the states whose courts of last resort have decisions in point, a court must consider separately each independent ground of coverage. *See* policy provisions on severability of interest in the General Conditions part of the USF & G AGM Policy, Docket No. 59, Exh. 9. *See also Federated American Ins. Co. v. Strong*, 102 Wash.2d 665, 689 P.2d 68, 71 (1984) (under an insurance policy with a severability clause, separate contracts for coverage exist between the insurer and each

separate insured); *Commercial Standard Ins. Co. v. American Gen. Ins. Co.,* 455 S.W.2d 714, 721 (Tex.1970) (exclusions from insurance must be examined as to each ground of coverage for each separate insured); *Pawtucket Mut. Ins. Co. v. Lebrecht,* 104 N.H. 465, 190 A.2d 420, 423 (1963) (same); *Morgan v. Greater New York Taxpayers Mut. Ins. Ass'n,* 305 N.Y. 243, 112 N.E.2d 273, 275 (1953); *MacBey v. Hartford Accident & Indem. Co.,* 292 Mass. 105, 107, 197 N.E. 516 (1935) (treating a person as an "insured" in relation to one kind of claim but not in relation to another kind of claim). *See generally* Robert E. Keeton and Alan J. Widiss, Insurance Law § 4.7 (1988) (discussing "omnibus clauses" and "additional insureds"). In considering each ground of coverage separately, the court must decide what are the terms and conditions that apply to that separate ground of coverage for that separate person or entity. Closely related to this rule is the corollary that defenses or exclusions enforceable against some other person or entity (or even enforceable against this driver under one of his other grounds of coverage) may not be enforceable against this driver under this separate ground of coverage.

Implicit in each side's arguments in favor of its motion for summary judgment and in opposition to the other side's motion for summary judgment is the assumption that only Lily Transportation, as a party listed as one of several parties listed under the caption "Additional Insured:" in an endorsement to the USF & G AGM Policy, is covered under that policy. The parties fail to address in their submissions what effect Exclusion 4(b) has on the relevant coverage if, instead of assuming that Lily Transportation was the only insured, one assumes that Mr. DeSanto (the driver of the tractor-trailer) was a separate insured. In other words, the parties do not address what the effect of the exclusion is if this court determines that neither Mr. DeSanto nor his employer was "another person" to whom the tractor-trailer was "rented," *for purposes of defining DeSanto's separate and independent coverage.* Under this assumption, this court must examine DeSanto's coverage under the USF & G AGM Policy as an additional insured because he had permission from Lily (and all others whose permission matters) to use the tractor-trailer.

The assumption that DeSanto was an independent insured in his own right, rather than simply because he was driving for another entity that was an additional insured, is more than just an imaginary hypothesis. Indeed, the parties have stipulated that DeSanto was a covered driver. The fact that in their stipulation the parties fell short of unambiguously stating that his coverage was as a person driving with permission of all parties whose consent could matter under applicable law is not a good reason for the court not to consider whether it is true that a correct application of the USF & G AGM Policy's provisions and governing law makes DeSanto an additional insured, independent of all other grounds of coverage for him, because he was one of the persons within the meaning of "*You,*" as used in the coverage provisions under the caption "ADDITIONAL INSURED." Docket No. 57, Exh. 9. That provision extends coverage to "*You,*" for "bodily injury … resulting from the acts or omissions of: 1. *You,* while using a covered *auto.*" *Id.*

The "Policy" issued as the USF & G AGM Policy at issue in this case consists of a collection of standard sheets appended together in a single package. The separate standard sheets appended together show evidence, both in the identifying legends on margins and in their content and structure, that they were prepared for use as parts of fundamentally different kinds of liability insurance "policies," and not just for Motor Vehicle Garage policies such as the USF & G AGM Policy. One glaring result is that the USF & G AGM Policy in evidence in this case does not contain any clause that explicitly defines the meaning of "covered *auto* " in the phrase, "*You,* while using a covered *auto* …." Docket No. 57, Exh. 9, Endorsement MM 9950.

In the overall circumstances of this case with all the varied relationships among the different entities and the drivers who drove the tractor-trailer units in circumstances similar to those occupied by DeSanto at the time

of this accident, it is all but unthinkable that the parties would have expected a driver like DeSanto to go get independent coverage, at his own cost, or else have his personal coverage while driving the tractor-trailer, as he was directed to do, subject to a limit so low that he would be at risk of tort liability that would wipe out his life savings except for that part of his assets that he could protect from levy of execution on a tort judgment against him, or could salvage from personal bankruptcy.

Similar reasons for interpreting the policy provisions and applicable state law in support of independent coverage for DeSanto appear when one attempts to explicate the meaning of acts and omissions of *"You,"* as including those of "[a]ny other person, while using a covered *auto* with *your* permission." *Id.* The USF & G AGM Policy does not state explicitly whether the person who is an "ADDITIONAL INSURED" while using with "your" permission has coverage limited by all defenses or exclusions that might be invoked against the *"You"* who gave the "permission."*Id.*

Once the possibility is acknowledged that the exclusion invoked by USF & G does not apply, it must be acknowledged also that DeSanto's coverage under the USF & G AGM Policy is unlikely to be treated as "excess" only, even if that would make a difference in the outcome of this case. Rules of law in many states would be more likely to make USF & G liable jointly with other companies that had issued coverage available to DeSanto as an additional insured.

For these reasons, I concluded at the hearing on April 10, 1998 that, on the record before this court, USF & G is not entitled to summary judgment.

I concluded also at the hearing on April 10 that, on the record before this court, defendants were not entitled to summary judgment. One reason is that the two grounds of independent coverage for DeSanto, explained immediately above, though very persuasive in my view, depend in part on issues regarding what state law applies and whether that state has statutes or precedents that constitute settled law on the subject rather than leaving undecided one or more potentially decisive elements of the reasoning as explained above for deciding that DeSanto had independent coverage.

## VIII. Alternative Grounds for Denial of Defendants,' Motions for Summary Judgment

The primary contention of defendants as a basis for their motions for summary judgment is a contention that adjudication of the questions of law and fact material to interpretation of the term "rented" in the exclusion is decisive as to all asserted claims and counterclaims remaining in this case because no other question of law or material fact remains in this case. As explained in Part VII, however, other determinations of law or material fact do remain in this case as a barrier to this court's granting summary judgment on the record now before the court.

Moreover, even if that barrier did not exist, I would still conclude that defendants, for the reasons stated below, have not met their burden as movants to make a preliminary showing that no genuine dispute of material fact remains in this case regarding interpretation of Exclusion 4(b).

It appears likely, on the present record, that the meaning of the term "rented" as used in the USF & G AGM Policy is ambiguous and will depend on considering whatever "extrinsic" evidence may be proffered by a party and determined by the court to be admissible for this limited purpose at least.

One question, for example, is whether the term "rented" in the exclusion does not include "leased" vehicles, however defined.

I do not pause here to explore other questions that are debated in the parties' briefs already filed in this case. It is enough, for present purposes, to state that defendants have failed to meet their burden as movants for summary judgment, on the record now before the court.